[No. 34323.   Department Two.   April 17, 1958.]

NELLIE C. TILLY, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Appellants.*[1]

[1]Reported in 324 P. (2d) 432.

The *Attorney General, John C. Martin, Assistant,* and *Brodie & Fristoe,* for appellants.

*F. W. Loomis,* for respondent.

DONWORTH, J.—This is an appeal from a judgment entered upon the verdict of a jury awarding to respondent a widow's pension and other incidental benefits under the workmen's compensation act (RCW Title 51).

The uncontroverted facts appear as follows:

On October 30, 1952, and for several months prior thereto, Floyd C. Tilly, aged fifty-one years, was in the employ of the Acme Door Corporation (which has since been succeeded by appellant Georgia-Pacific Corporation). At about ten o'clock a. m. on that day, Tilly, while working in the plant of his employer, left the machine which he was operating and walked toward the men's lavatory. Between his work station and the lavatory, he passed a machine operated by his coemployee, Mrs. Hathaway, who was then holding a wet paper towel in her hands. As he passed Mrs. Hathaway, Tilly did some act or made some remark to her (the exact nature of which Mrs. Hathaway does not recall). She started to pursue him with the intention of washing his

face with the paper towel, but he ran into the lavatory before she could overtake him.

Several minutes later, Tilly emerged from the lavatory to return to his work station, when Mrs. Hathaway resumed the pursuit. While running in the direction of the lavatory in an attempt to escape, Tilly was intercepted by another coemployee, Mr. Daniels, who was about fifty pounds heavier than Tilly. Daniels held Tilly, while Mrs. Hathaway administered a face washing with the paper towel. During the course of the brief scuffle, Tilly was twisting and turning, attempting to free himself and to prevent his face from being washed. The incident was over within a matter of a very few minutes. After Tilly was released by Daniels, he was noticeably breathless.

This incident appears to have been entirely jocular, being the product of a moment of merriment. No animosity between any of the participants was shown. After the face washing was accomplished, Daniels and Tilly walked off together toward the lavatory. Both men were laughing.

Upon entering the lavatory, which was about ten or twelve feet away from the place where the scuffle took place, Tilly walked directly to the water fountain. While attempting to drink, he slumped to the floor, unconscious. His face was flushed and he was having difficulty in breathing.

Tilly was thereafter removed to a hospital, where, without regaining consciousness, he died the following morning at 12:15 a. m. The attending physician diagnosed the cause of death as due to a cerebral hemorrhage.

Thereafter, an autopsy was performed and a pathological report revealed a large dissecting aneurysm with its origin in the aorta. The physicians conducting the post-mortem examination thus concluded that the "cerebral findings as noted clinically were undoubtedly due to a severe anoxemia." Anoxemia is a reduction in the normal amount of oxygen in the blood. There was conflicting medical testimony as to whether there was a causal connection between the face-washing incident and the death.

Respondent filed a timely claim with the department for

a widow's pension. Thereafter, her claim was rejected by the supervisor of industrial insurance. Respondent then appealed to the board of industrial insurance appeals. Pursuant to a hearing on the matter, the board entered findings of fact, which read, in part, as follows:

"3. The deceased's death was caused by the dissecting aneurism originating in the aorta.

"4. The deceased's instigation and participation in the act of horseplay described in finding No. 2 above was not in furtherance of the employer's business nor was it a duty required by his contract of employment or incidental thereto.

"5. The dissecting aneurism which brought about the death of Floyd C. Tilly was neither caused by, contributed to, or hastened by the exertion involved in the horseplay incident of October 30, 1952, but was due to the natural progression of degenerative changes in the medial lining of the aorta."

The board then concluded:

"1. The deceased workman, at the time of the horseplay incident in the morning of October 30, 1952, was not in the course of his employment with the Acme Door Corporation.

"2. The deceased workman did not sustain an industrial injury on October 30, 1952, within the contemplation of the workmen's compensation act.

"3. The petitioner herein is not entitled to any benefits of the workmen's compensation act, and the supervisor's order of December 2, 1952, rejecting this claim, is correct and should be sustained."

From the order of the board rejecting her claim, respondent appealed to the superior court. The jury, by special interrogatory, returned a verdict in favor of respondent. The department and the employer of the deceased workman have appealed from the judgment entered pursuant thereto.

The assignments of error claim that the trial court erred in denying appellants' motion for judgment n.o.v., in giving instructions Nos. 8, 11, 12, and 14, and in refusing to give certain requested instructions.

Appellants, in their brief, concede that "the [medical] testimony in the record is in conflict as to whether or

not the dissecting aneurysm was causally related to the 'skylarking' or 'horseplay' incident of October 30, 1952, which preceded Mr. Tilly's collapse." This is clearly a concession that the jury was entitled to find that Tilly's death was caused by a compensable injury as defined in RCW 51-.08.100, unless there were error in the instructions. See *Porter v. Department of Labor & Industries,* 51 Wn. (2d) 634, 320 P. (2d) 1099 (1958).

The principal question, as stated by appellants in their brief, is

"Whether or not the horseplay incident which occurred on the 30th day of October, 1952, was an act within the course and scope of Mr. Tilly's employment with the Acme Door Corporation?"

But we think that the question can be stated more succinctly as: Was Mr. Tilly in the course of his employment at the time of his injury?

RCW 51.32.010 [Laws of 1949, chapter 219, § 1, p. 714] provides:

"Each workman injured in the course of his employment, or his family or dependents in case of death of the workman, shall receive out of the accident fund compensation in accordance with this chapter, and, except as in this title otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever: . . ."

"Workman," as defined by RCW 51.08.180, means:

". . . every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his employment; . . ."

In applying these statutes to a given case, we have consistently approved the language of this court in *D'Amico v. Conguista,* 24 Wn. (2d) 674, 167 P. (2d) 157 (1946). We there said:

"Under our workmen's compensation act, definite conditions must exist at the time of an injury in order to entitle one to the benefits of the act. First, the relationship of employer and employee must exist between the injured person and his employer (except in some cases where the injured

person is an independent contractor); second, the injured person must be in the course of his employment; third, that the employee must be in the actual performance of the duties required by the contract of employment; and, fourth, the work being done must be such as to require payment of industrial insurance premiums or assessments."

See *Bridges v. Department of Labor & Industries*, 46 Wn. (2d) 398, 281 P. (2d) 992 (1955); *Scobba v. Seattle*, 31 Wn. (2d) 685, 198 P. (2d) 805 (1948); *Mutti v. Boeing Aircraft Co.*, 25 Wn. (2d) 871, 172 P. (2d) 249 (1946); *Purinton v. Department of Labor & Industries*, 25 Wn. (2d) 364, 170 P. (2d) 656 (1946).

In determining the question of whether the employee (Tilly) was, at the time of the scuffle, in the course of his employment, we are guided by the rule stated most recently in *Lunz v. Department of Labor & Industries*, 50 Wn. (2d) 273, 310 P. (2d) 880 (1957):

"The test adopted by this court for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest. *Cugini v. Department of Labor & Industries*, 31 Wn. (2d) 852, 199 P. (2d) 593; *D'Amico v. Conquista*, 24 Wn. (2d) 674, 167 P. (2d) 157; *Young v. Department of Labor & Industries*, 200 Wash. 138, 93 P. (2d) 337, 123 A. L. R. 1171."

The undisputed evidence shows that Tilly was working in the plant of his employer when he left his work station to go to the men's lavatory which was maintained by the employer for the convenience and comfort of his employees. Since there is no showing that Tilly's leaving his work station was for any purpose other than the proper use of the facilities provided by the employer, we must hold that he was in the course of his employment unless he unreasonably deviated from such purpose en route to such an extent that the deviation could be said to constitute an abandonment (however temporary) of his employment.

In *Welden v. Skinner & Eddy Corp.*, 103 Wash. 243, 174 Pac. 452 (1918), we held that an employee en route to a toilet on the employer's premises was within the "course of employment." In that case, we said:

"That the work was extra hazardous is, of course, beyond question; and that appellant was injured upon the premises and at the plant of respondent, *while in the course of his employment*, we think is equally plain. Among the decisions of the courts lending support to this conclusion we note the following: [Citing authorities.] The last cited case is of special interest because it involves injury to a workman while going to a toilet resorted to by the workmen of the plant." (Italics ours.)

Parenthetically, the italicized portion is *dictum*, because the statute at that time covered employees who were injured while on the plant of the employer regardless of what they were doing. But the decision recognizes that going to the lavatory is in the course of employment. This is the rule generally. See Larson, Workmen's Compensation Law, Vol. I, § 21.53.

There being no contention that Tilly unreasonably loitered either on his way to or from the lavatory, and it being undisputed that the delay on his return was caused solely by the intervention of two fellow employees as described above, we are convinced that, under the particular circumstances of this case, Tilly was, as a matter of law, at all times in question in the course of his employment within the meaning of RCW 51.32.010 until he was stricken.

In reaching this conclusion, we have considered the views expressed by various authors on the subject of "horseplay" or "skylarking" in workmen's compensation cases. See Larson, Law of Workmen's Compensation, Vol. 1, § 23, particularly § 23.63; Schneider's Workmen's Compensation Text (Perm. ed.), Vol. 6, chapter 27, particularly § 1614; Horovitz, 41 Illinois Law Review 311 (1946); Horovitz, 15 NACCA Law Journal 29 (1955); Riesenfeld, 42 California Law Review 531 (1954), particularly pages 546 through 552. But we prefer to base our opinion solely upon the conduct of Mr. Tilly in relation to his employment, because our

compensation act provides "sure and certain relief for workmen injured in extrahazardous work . . . regardless of questions of fault and to the exclusion of every other remedy." RCW 51.04.010. It is not essential under our act that an injury "arise out of" employment, as required by the compensation acts of forty-one other states. See Larson, Law of Workmen's Compensation, Vol. 1, § 6.10 for comparison; also, *Stertz v. Industrial Ins. Comm.*, 91 Wash. 588, 158 Pac. 256 (1916).

█ It follows from the foregoing that the only issue of fact presented for the jury's determination was whether Tilly's death was caused or hastened by the injury received during the scuffle. There was sufficient medical evidence before the jury (if believed by it) to warrant its answering in the negative the interrogatory submitted in instruction No. 14, which reads, in part:

"Was the Board of Industrial Insurance Appeals correct in its order of February 18, 1955 sustaining the order of the Supervisor of Industrial Insurance dated December 2, 1952 which held that there was no injury within the contemplation of the compensation act and that the death was due to natural causes, and rejected the claim filed by Nellie C. Tilly?

"ANSWER: ........................................................ (Yes or No)"

Since, under the undisputed facts, the decedent was in the course of his employment when injured, and there remained for submission to the jury the single question of causal connection between the scuffle and the death of the decedent to be determined from conflicting medical testimony, the trial court did not err in refusing to grant appellants' motion for dismissal based upon their challenge to the sufficiency of the evidence. Nor did the trial court err in rejecting appellants' proposed instruction which directed the jury to return a verdict in favor of appellants.

Appellants complain that the court erred in submitting to the jury the interrogatory (above quoted) contained in instruction No. 14. They argue that the jury was instructed only to determine whether the order of the board of indus-

trial insurance appeals was correct or incorrect; that the decision of the board involved both questions of *law* and *fact*; that the ultimate decision of the board in

". . . denying respondent's claim was based upon two narrow issues: First, that the decedent Tilly was not acting within the course of his employment in participating in the horseplay incident . . . and, second, on the basis that the more credible evidence in the record established that there was no causal relation between the decedent's death and the horseplay incident."

Appellants argue that

"In effect, the jury [by instruction No. 14] is left with the inference that the issue to be decided by them was whether or not the Board is correct or not in determining that there was no injury to the decedent."

As previously pointed out, the first of the narrow issues suggested by appellants was an issue of law to be determined from uncontroverted facts. The second suggested issue was clearly a question of fact to be determined from medical testimony conceded by appellants to be conflicting. If, as appellants contend, the interrogatory contained in instruction No. 14 had the effect of withdrawing from the jury the first issue (one of law) and submitting only the second issue (one of fact), the trial court did not err in this regard.

Assignments of error Nos. 3, 4, 5, 6, 7, 8, and 11 relate to certain proposed instructions and interrogatories which were rejected for submission to the jury and to an instruction given by the trial court. All of these concern, or partially concern, the issue of "course of employment." While we are satisfied that the third paragraph of instruction No. 12 (relating to horseplay) is clearly erroneous, the error is not prejudicial under the peculiar circumstances of this case because Mr. Tilly was, as a matter of law, within the course of his employment at the time of the scuffle.

Appellant's ninth assignment of error is directed to instruction No. 8. It is contended that certain statements therein contained (relating to burden of proof) are prejudicially erroneous. A reading of this instruction in connection

with instructions Nos. 2, 4, 7, and 8-a (to which error has not been assigned) convinces us otherwise. In *Myers v. West Coast Fast Freight,* 42 Wn. (2d) 524, 529, 256 P. (2d) 840 (1953), we said:

"Instructions must be considered as a whole. Even though a detached statement may, under the facts, be technically erroneous, it is not prejudicial error if the entire instructions fairly state the law. *Herndon v. Seattle,* 11 Wn. (2d) 88, 118 P. (2d) 421, and cases cited."

See, also, *Patterson v. Krogh,* 51 Wn. (2d) 73, 74, 316 P. (2d) 103 (1957); *Cote v. Allen,* 50 Wn. (2d) 584, 313 P. (2d) 693 (1957).

■ Assignment of error No. 10 relates to instruction No. 11, by which the jury was instructed upon the definition of "injury" within the meaning of RCW 51.08.100. Although this instruction is mentioned in appellants' brief in connection with their ninth assignment of error, it is not otherwise argued to be erroneous in any respect. It will, therefore, not be further considered. *Gattavara v. Scheumann,* 51 Wn. (2d) 55, 58, 315 P. (2d) 649 (1957); *Erdmann v. Henderson,* 50 Wn. (2d) 296, 298, 311 P. (2d) 423 (1957).

Having found no merit in the assignments relating to the matter of instructions, the trial court cannot be held to have erred in denying appellants' motion for new trial.

The judgment entered upon the jury's verdict is hereby affirmed.

HILL, C. J., ROSELLINI, FOSTER, and HUNTER, JJ., concur.