[No. 4366-5-III.  Division Three.  July 1, 1982.]

FLAVORLAND INDUSTRIES, INC., *Respondent,* v. ERVIN SCHUMACKER, *Appellant.*

*William L. Halpin* and *Nashem, Prediletto, Schussler & Halpin,* for appellant.

*Calhoun Dickinson* and *Perkins, Coie, Stone, Olsen & Williams,* for respondent.

McINTURFF, C.J.—Was Ervin Schumacker acting within the scope of his employment when he left a business meeting in a highly intoxicated state in a company car which subsequently left the road, causing his death?

Mr. Schumacker was the assistant manager of the

Flavorland Meat Packing Plant in Toppenish, Washington. He was salaried, worked irregular hours, was provided an automobile, and all operating expenses of the auto were paid by Flavorland. His public relations duties required him to socialize with the local livestock buyers and sellers. While engaged in these duties, Mr. Schumacker, on Thursday, January 29, 1976, attended the weekly area livestock auction. Afterwards, Mr. Schumacker and many of the cattle sellers and buyers gathered in the lounge of the Squeeze Inn, a restaurant and bar in Zillah, Washington. Flavorland expected him to attend these weekly gatherings which had become a tradition among the cattle people. In fact, a charge account had been established by Flavorland to pay for the drinks and dinners charged by Mr. Schumacker for himself and others over the previous 3½ to 4 years. Mr. Schumacker occasionally overindulged in alcohol at these gatherings, but his wife said he usually arrived home between 10 p.m. and midnight.

On the night in question, Mr. Schumacker drank more than usual. He left the restaurant in his company car about 9:30 p.m. and while proceeding through the city of Zillah, his car struck the extended bumper of an angle–parked pickup truck. Mr. Schumacker drove slowly after the accident, then suddenly accelerated out of town. Approximately 1/10 mile out of Zillah, his automobile, traveling at 70 to 90 miles per hour around a curve, left the road and he was killed. His blood alcohol level was .28 percent.

Mrs. Schumacker's claim for a widow's pension was rejected by the Department of Labor and Industries (DLI) on July 20, 1976. She appealed to the Board of Industrial Insurance Appeals, which reversed DLI and allowed her claim for benefits. Flavorland, a self–insurer, appealed to the superior court. The jury determined Mr. Schumacker was acting within the scope of his employment at the time of his death. The jurors also answered a special verdict form which stated he was intoxicated at the time of his death; that he became intoxicated during the course of his employment; and that his intoxication was a proximate

cause of his death.

Flavorland moved for judgment notwithstanding the verdict. This motion was granted after the trial judge concluded, as a matter of law, Mr. Schumacker was not acting within the scope of his employment. The trial court made three rulings. First, there was insufficient evidence to permit a finding that Mr. Schumacker was on his way home when the accident occurred. Second, Mr. Schumacker's failure to stop after striking the pickup was an attempt to escape apprehension and therefore a purely personal act. Finally, if Mr. Schumacker was so intoxicated he was not aware he had been involved in the accident with the pickup, he had become too intoxicated to be considered as remaining within the scope of employment.

Flavorland argued to the jury that Mr. Schumacker was acting outside the scope of his employment on the night in question. He had recently notified Flavorland of his intention to terminate his employment. Flavorland maintains Mr. Schumacker's attendance at the meeting was to celebrate his impending termination of employment. Flavorland presented testimony that the majority of Mr. Schumaker's evening was spent soliciting business for his new employer, one of Flavorland's competitors. However, Mr. Van Monson, a cattle seller who was present at the meeting, said Mr. Schumacker spent only 5 to 10 minutes of the evening discussing his new employment. Flavorland further contended that even if Mr. Schumacker was at the gathering on company business, his degree of intoxication constituted such a deviation from the scope of his employment that he could not have been furthering any of Flavorland's interests. Flavorland urges that Mr. Schumacker's failure to stop after hitting the pickup amounted to his fleeing the scene of a hit–and–run accident which takes him outside the scope of his employment.[1]

---

[1]Flavorland argued before the Superior Court that Mr. Schumacker's conduct constituted negligent homicide under RCW 46.61.520 and such felonious conduct, while in the scope of employment, operated to exclude him from the coverage of

The Industrial Insurance Act was promulgated to provide sure and certain relief for workers injured in their work. RCW 51.04.010. A worker is entitled to compensation if injured in the course of his employment. RCW 51.32.010. A worker acts within the course of his employment when acting at his employer's direction or in the furtherance of his employer's business. RCW 51.08.013.

■ The general rule is that a worker is not, under ordinary circumstances, in the course of employment while going to or from his place of employment. *Aloha Lumber Corp. v. Department of Labor & Indus.*, 77 Wn.2d 763, 766, 466 P.2d 151 (1970); *Superior Asphalt & Concrete Co. v. Department of Labor & Indus.*, 19 Wn. App. 800, 802, 578 P.2d 59 (1978). The well established exception to this rule is that a worker is within the course of employment when going to or from work in a vehicle furnished by the employer as an incident of employment pursuant to custom or contractual obligation, express or implied. *Westinghouse Elec. Corp. v. Department of Labor & Indus.*, 94 Wn.2d 875, 880, 621 P.2d 147 (1980); *Aloha Lumber, supra.*

■ In ruling on a motion for judgment notwithstanding the verdict, the court must view the evidence in a light

---

the worker's compensation statute pursuant to RCW 51.32.020.

RCW 46.61.520 provides in pertinent part:

(1) When the *death of any person* shall ensue within three years as a proximate result of injury received *by the driving of any vehicle by any person* while under the influence of or affected by intoxicating liquor . . . the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle.

(Italics ours.) Negligent homicide by means of a motor vehicle is a felony. *State v. Sayward*, 66 Wn.2d 698, 700, 404 P.2d 783 (1965).

RCW 51.32.020 provides in pertinent part:

If injury or death results to a worker . . . while the worker is engaged in the attempt to commit, or the commission of, a felony, neither the worker nor the widow, . . . shall receive any payment under this title.

This argument is without merit because the negligent homicide statute is inapplicable to these facts. RCW 46.04.010 provides the terms used in RCW Title 46 shall have the meaning given to them in that chapter. Homicide is not defined in this chapter. RCW 9A.32.010 defines homicide as the killing of a human being by the act, procurement, or omission *of another*. Thus, Mr. Schumacker could not have been found guilty of the negligent homicide of himself.

most favorable to the nonmoving party and all material evidence favorable to that party must be taken as true. The court, in granting a judgment notwithstanding the verdict, must be able to say as a matter of law that neither evidence nor reasonable inferences from evidence are sufficient to sustain the verdict. There is no element of discretion vested in the trial court in ruling upon such a motion. *Moyer v. Clark*, 75 Wn.2d 800, 803, 454 P.2d 374 (1969). If substantial evidence supports the verdict of the jury, the verdict must stand. *Grange v. Finlay*, 58 Wn.2d 528, 529, 364 P.2d 234 (1961). Thus, the dispositive issue is whether substantial evidence was presented to support a finding of the jury that Mr. Schumacker was acting within the scope of his employment at the time of his death.

In viewing the evidence and all reasonable inferences therefrom in a light most favorable to Mrs. Schumacker, the jury could have reasonably found Mr. Schumacker's attendance at the Thursday night gatherings to have been a long–standing practice; that his attendance was to perform the public relations function of his job; that Flavorland knew he drank and expected him to buy drinks for others; that Flavorland not only condoned this practice but encouraged it;[2] that he had been known to drink to excess in the past; that Flavorland paid for Mr. Schumacker's drinks and the drinks he bought for others; that Flavorland provided him with a car to drive to and from work; and when Mr. Schumacker left the gathering at his usual time, he was on his way home when the accident occurred. The findings by both the Board and the jury that Mr. Schumacker was acting within the scope of his employment at the time of his death are supported by substantial evidence.

Flavorland contends there was no evidence Mr. Schumacker was headed home at the time of his death and such

---

[2]Prior to Mr. Schumacker's death, a company directive questioned the amount of money being expended at these Thursday gatherings. Although Mr. Schumacker was told to "slow down a little", Flavorland continued to pay for dinners and drinks charged by him and other Flavorland employees. The practice was discontinued following Mr. Schumacker's death.

a conclusion is speculation. Testimony was presented that Mr. Schumacker left the gathering at his regular time and was on the highway from Zillah to Toppenish which was a direct route to his home. This evidence is sufficient to support a jury finding he was on his way home at the time of his death.

■ Flavorland also argued to the jury that even if Mr. Schumacker was acting within the scope of his employment when he left the Squeeze Inn, his failure to stop after striking the pickup truck was an attempt to flee a hit–and–run accident which constituted an abandonment of his employment. It bases the abandonment theory on the premise that a worker is no longer in the scope of his employment when he departs from its purpose to such an extent the deviation could constitute an abandonment of his employment. *Tilly v. Department of Labor & Indus.*, 52 Wn.2d 148, 324 P.2d 432 (1958). Whether Mr. Schumacker departed from the course of his employment to the extent necessary to constitute an abandonment of that employment was a factual determination for the jury which specifically found Mr. Schumacker to be acting within the scope of his employment at the time of his death. This finding, which is supported by substantial evidence, precludes Flavorland's abandonment theory.[3]

Flavorland next argues Mr. Schumacker's level of intoxication constitutes, as a matter of law, an abandonment of his employment. We disagree.

■ Intoxication is a defense, in the absence of an applicable statute, only when the claimant has become so intoxicated he abandons his employment. 1A A. Larson,

---

[3]The review of factual issues in appeals from worker's compensation cases is limited to an examination of the record to determine whether there is substantial evidence to support the findings of the trial court made after de novo review. *Bennett v. Department of Labor & Indus.*, 95 Wn.2d 531, 627 P.2d 104 (1981); *Groff v. Department of Labor & Indus.*, 65 Wn.2d 35, 395 P.2d 633 (1964). It should be noted that RCW 34.04.150 specifically excludes appeals from the Board of Industrial Insurance Appeals from the coverage of the administrative procedure act, RCW 34.04.

*Workmen's Compensation* § 34.21, at 6–72 (1979). Whether Mr. Schumacker's intoxication constituted an abandonment of his employment was for the jury to decide. The jury heard the testimony, viewed the demeanor of the witnesses, and was instructed that:

> A workmen [*sic*] may be acting in the course of his employment even though he may be intoxicated or under the influence of intoxicating liquor.

Instruction 7.

> A worker otherwise acting in the course of his employment deviates and departs therefrom during such time as he engages in a course of action which is entered into for his own purposes and which is neither incident to his employment nor in furtherance of his employer's interests.

Instruction 12.

Flavorland argued to the jury that Mr. Schumacker's intoxication took him outside the scope of his employment. The jury disagreed and found he was acting within the scope of his employment at the time of his death. As previously noted, this finding is supported by substantial evidence. We decline the invitation to invade the province of the jury.

The present case must be distinguished from those where the consumption of alcohol is unrelated to the worker's job activities. *M & M Parking Co. v. Industrial Comm'n,* 55 Ill. 2d 252, 302 N.E.2d 265 (1973); *Richard v. George Noland Drilling Co.,* 79 Wyo. 124, 331 P.2d 836 (1958); *O'Neil v. Fred Evens Motor Sales Co.,* 160 S.W.2d 775 (Mo. Ct. App. 1942). In those cases, the worker became intoxicated either prior to or during his working hours. There was no anticipation by the employer that the worker would be consuming alcohol. Here, Mr. Schumacker's job included socializing where alcohol was served.

If an employer continually encourages and finances an employee's attendance at weekly functions which expose that employee to an atmosphere which results in the employee becoming intoxicated, he may not then disclaim

liability after that employee is killed on his way home while driving his company car. In the case at bench, we hold that Mr. Schumacker's intoxication was not an abandonment of his employment.

█ Flavorland argues it is entitled to a new trial should this case be remanded. It contends the trial court erred in not giving the following requested jury instruction:

> A worker does not depart from the course of his employment simply because he becomes intoxicated. However, if a worker voluntarily becomes so intoxicated that he is incapable of performing his work, he is no longer acting in the course of his employment.

As previously stated, the jury was instructed on the law as it relates to intoxication. A party is not entitled to its own wording of the jury instructions. The test is whether a party can argue its theory of the case under the instructions given as a whole—if the party can, the court's refusal to give a requested instruction is not reversible error. *Kjellman v. Richards,* 82 Wn.2d 766, 514 P.2d 134 (1973); *Hammond v. Braden,* 16 Wn. App. 773, 559 P.2d 1357 (1977). Flavorland argued to the jury that one who becomes intoxicated may not be acting in the furtherance of his employer's business. Flavorland could, and did, argue its theory of the case to the jury. It is entitled to no more.

The judgment of the Superior Court granting judgment notwithstanding the verdict is reversed. This case is remanded for the issuance of an order allowing Mrs. Schumacker's claim for widow's benefits.

MUNSON and ROE, JJ., concur.