[No. 12677–6–I.   Division One.   September 24, 1984.]

JAMES A. LEE, *Appellant*, v. JULIETTE SAUVAGE, *Respondent*.

*Nelson & McCarthy, P.S., Rodney T. Harmon,* and *Clinton H. Hattrup,* for appellant.

*Sax & MacIver* and *Lawrence B. Ransom,* for respondent.

DURHAM, C.J.—James Lee appeals from the denial of his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, in connection with an unlawful detainer action brought against Juliette Sauvage. Sauvage cross–appeals from the denial of her motion for summary judgment and her request for costs and attorney's fees.

Appellant James Lee is the owner of a 20–percent interest in a parcel of partially submerged land on Portage Bay in Seattle. Respondent/cross–appellant Juliette Sauvage is the owner of a houseboat moored on appellant's property. Sauvage rents the moorage site on a month–to–month basis. The property was originally purchased in the 1950's by Lee's parents, Dr. Albert Lee and Frances Lee. In July 1978, Lee, who had been working in Alaska for several years, returned to Seattle and, in January 1979, became

involved in managing the moorage with his father.

When his parents decided to sell their home in January 1980, Lee decided to reside on the moorage site. Accordingly, on November 29, 1980, Lee served Sauvage with a 4–month notice to vacate the premises by March 31, 1981. When Sauvage failed to vacate, Lee commenced this unlawful detainer action. In her answer, Sauvage asserted an affirmative defense based upon section 3 of Seattle ordinance 109280 (as amended by ordinance 109630) (hereinafter the houseboat ordinance). Section 3 defines the permissible purposes for which a moorage owner can seek to evict a houseboat owner. By way of amended answer, Sauvage also raised section 4 of the ordinance as an affirmative defense. Section 4 prohibits eviction for the purpose of retaliating against the tenant's exercise of his or her legal rights with respect to the houseboat.

Cross motions for summary judgment were filed, and the trial judge denied Sauvage's motion and partially granted Lee's motion. In so doing, the trial judge held that section 3 of the houseboat ordinance was unconstitutional and unavailable as an affirmative defense.

The case was first tried in August 1981, but ended in a mistrial. The second trial began on November 18, 1981. Lee's motion to strike the retaliation defense was denied, as were several motions in limine to exclude evidence on relevancy grounds. Lee's motion for a directed verdict was denied, and the jury returned a verdict for Sauvage on November 25, 1981. Lee's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, was denied on December 11. The court also denied Sauvage's request for attorney's fees and partially denied her request for costs incurred in connection with certain pretrial depositions. Lee appealed, and Sauvage cross–appealed from the denial of her motion for summary judgment and her request for costs and fees.

### LEE'S APPEAL

Lee assigns error to the trial court's denial of his motion

for judgment notwithstanding the verdict. He argues that, because he established a prima facie case of unlawful detainer which was unrebutted, he is entitled to relief as a matter of law because the provisions of the houseboat ordinance relied upon by Sauvage may not be asserted as affirmative defenses. He also argues that the affirmative defenses were not supported by substantial evidence.

Lee first contends that Sauvage was not entitled to interpose the houseboat ordinance as a defense because municipalities do not have the authority to create affirmative defenses to civil actions. He argues that because municipal authority under the police power, *see* Const. art. 11, § 11, is confined to the local sphere, a city may not decrease civil liability pursuant to a state statute by creating an affirmative defense to an unlawful detainer action. We find this argument unpersuasive.

Lee relies on *Spokane v. J-R Distribs., Inc.,* 90 Wn.2d 722, 585 P.2d 784 (1978) and *State ex rel. Fawcett v. Superior Court,* 14 Wash. 604, 45 P. 23 (1896) to support his position. In *J-R Distributors,* the City of Spokane enacted an ordinance declaring pornographic bookstores and theaters to be "moral nuisances." The ordinance provided that an action could be brought in superior court to abate any such nuisance, and it purported to set forth the mode of practice and procedure and rules of evidence to be applied. The court held that the police power does not empower municipalities to confer jurisdiction upon the superior courts or to prescribe the procedures to be followed by them. The court stated that the police power encompasses only matters of local concern, and that such matters do not include the practice and procedure of the superior courts. Similarly, in *Fawcett* the court held that the City of Tacoma did not have the authority to vest the superior courts with jurisdiction over cases contesting the validity of municipal elections.

Here, however, the houseboat ordinance does not purport to expand or contract the jurisdiction of the superior courts or regulate their practice and procedure. The

ordinance simply limits the circumstances under which a houseboat owner can be evicted. The interest in statewide uniformity of civil practice and procedure at the heart of *J– R Distributors* is in no way undermined by the houseboat ordinance. Although it is true that municipalities do not have authority under the police power to enact regulations that conflict with the general laws of the state, *see Seattle v. Wright,* 72 Wn.2d 556, 559, 433 P.2d 906 (1967), no such conflict exists between the houseboat ordinance and the unlawful detainer statute.

Moreover, the Washington Supreme Court has expressly acknowledged that city ordinances can be set up as affirmative defenses to unlawful detainer actions. In *Kennedy v. Seattle,* 94 Wn.2d 376, 617 P.2d 713 (1980), the court invalidated the predecessor to ordinance 109280 as an unconstitutional taking of private property. Before reaching the constitutional issue, however, the court rejected an argument that the ordinance was preempted by the unlawful detainer statute. In so doing, the court stated:

> A defendant in an unlawful detainer action may assert any defenses available. . . . The ordinance does not raise further procedural barriers between landlord and tenant but simply represents another defense for the tenant.

*Kennedy,* at 384.[1]

Lee argues that the quoted language is mere dictum, because it was unnecessary to the court's conclusion that the ordinance was not preempted by the unlawful detainer statutes. He argues that because *Kennedy* reconciled the two laws on the ground that the ordinance is substantive while the unlawful detainer statute is procedural, the court did not need to determine if the ordinance could be raised as an affirmative defense. However, Lee's argument ignores

---

[1]More recently, in *Granat v. Keasler,* 99 Wn.2d 564, 663 P.2d 830, *cert. denied,* 104 S. Ct. 549 (1983), the court invalidated the successor to the ordinance at issue in *Kennedy.* The court noted that because the ordinance was unconstitutional it "obviously cannot be used as an affirmative defense in an unlawful detainer action." *Granat,* at 570 n.1. This language clearly implies that the opposite would have been true had the ordinance been upheld.

the fact there would be no need to resolve any preemption problem by classifying the ordinance in this fashion if it were not assumed that the ordinance could be raised as a defense. Even if the quoted language is dictum, that does not mean that we are bound to disregard it, as Lee implies. *See State v. Nikolich,* 137 Wash. 62, 66, 241 P. 664 (1925).

Lee next argues that section 3 of ordinance 109280 (as amended by ordinance 109630) constitutes an unconstitutional taking of private property without just compensation and, therefore, is unavailable as an affirmative defense. Moreover, Lee points out that the court expressly so ruled in its order of partial summary judgment. Thus, Lee contends that the jury should not have been instructed on Sauvage's affirmative defense based upon section 3. Section 3 of ordinance 109280 limits the circumstances under which a moorage owner may permissibly evict a floating home owner. Subsection $6^2$ states that such an eviction is lawful when

The floating home owner is directed by the moorage owner to remove his or her home from its moorage site by a written notice given at least four months prior to the demanded date of removal where the purpose of such demand for removal is to permit the moorage owner to convert the moorage site to a personal or other non–commercial use or to personally occupy such moorage site with a floating home to be used as such owner's residence, provided that such demand for removal is not contrary to any existing lease agreement between the moorage owner and such floating home owner and that such moorage owner locates another lawful moorage site within the City for the displaced floating home owner.

Ordinance 109280.

Shortly after ordinance 109280 was enacted, the Washington Supreme Court held that its predecessor, section

---

[2]Subsections 1 through 5 permit eviction for the following reasons: (1) failure to pay rent; (2) and (3) failure to comply with the reasonable terms and conditions of the tenancy; (4) failure to abate a nuisance; and (5) the moorage owner intends to convert the property to commercial use. These provisions also contain certain requirements relating to notice and the reasonableness of lease terms.

2(6) of ordinance 107012, was unconstitutional. *See Kennedy v. Seattle, supra.* Section 2(6) was virtually identical to section 3(6) of ordinance 109280.[3] The court in *Kennedy* held that section 2(6) was unconstitutionally prohibitory and confiscatory because it effectively made it impossible for the moorage owner to evict the houseboat owner and use the moorage for his own personal residence. The fatal flaw identified by the court was the requirement that the moorage owner locate another lawful moorage in Seattle for the tenant's houseboat. Because the parties recognized that no other moorage sites were available, the court held that the ordinance amounted to an unconstitutional taking. *Kennedy,* at 385–86.

Apparently in response to *Kennedy,* the City Council amended the eviction provisions of ordinance 109280 by ordinance 109630. The ordinance added a subsection 7 to section 3 of ordinance 109280. Subsection 7 provides:

> Notwithstanding any other provision of this Section, it shall be lawful for a floating home moorage owner to demand the removal of a floating home from a moorage site by giving the floating home owner at least six months' written notice, when the purpose of such demand is to permit the moorage owner to use the moorage site for a floating home which will be occupied by the moorage owner as his or her own residence; provided that such floating home moorage owner either:
>
> (a) locates another lawful floating home moorage site within the city for the displaced floating home, or
>
> (b) agrees in writing to compensate the displaced floating home owner for damages caused by the removal

---

[3]Section 2(6) permitted eviction when:

"The floating home owner is directed by the moorage owner to remove his or her home from its moorage site by a written notice given at least six months prior to the demanded date of removal where the purpose of such demand for removal is to permit the moorage owner to personally occupy such moorage site with a floating home to be used as such owner's residence, provided that such demand for removal is not contrary to any existing lease agreement between the moorage owner and such floating home owner *and that such moorage owner locates for the displaced floating home owner another lawful moorage site within The City of Seattle." Kennedy v. Seattle,* 94 Wn.2d 376, 385–86, 617 P.2d 713 (1980) (quoting ordinance 107012, § 2(6)).

of such floating home from the moorage site; said damages not to exceed the fair market value of the floating home with a moorage site prior to eviction.[4]

In her answer, Sauvage generally asserted section 3 of ordinance 109280 (as amended by ordinance 109630) as an affirmative defense without distinguishing between subsections 6 and 7. Similarly, in its order for partial summary judgment, the court declared that section 3 (as amended) is unconstitutional without distinguishing the two subsections. To the extent that Sauvage intended to rely upon subsection 6, the Supreme Court recently declared it to be unconstitutional under the *Kennedy* analysis. *Granat v. Keasler,* 99 Wn.2d 564, 663 P.2d 830, *cert. denied,* 104 S. Ct. 549 (1983). In so doing, the court stated that subsection 6 "obviously cannot be used as an affirmative defense in an unlawful detainer action." *Granat,* at 570 n.1.

Although the court in *Granat* did not consider subsection 7, it would appear equally unconstitutional under *Kennedy.* Subsection 7 differs from subsection 6 primarily in that the moorage owner is given the additional option of paying the houseboat owner the fair market value of his property. It is certainly "unconstitutionally prohibitory and confiscatory" to essentially require the moorage owner to buy back from the tenant the right to reside on property he already owns. *Kennedy,* at 384.

■ Sauvage, however, argues that the effect of the court's ruling that section 3 is unconstitutional was to invalidate only those portions of the ordinance that require the moorage owner either to locate another moorage or pay fair market value. In other words, according to Sauvage, the fact that the moorage owner has failed to comply with these requirements cannot be raised as an affirmative defense. She contends that the requirement that the moorage owner evict for a permissible purpose—use of the moorage for a

---

[4]For *unknown reasons, subsection 6 was left intact. Lee does not contend that* subsection 7 impliedly repealed subsection 6. Nonetheless, the prerequisites for an implied repeal appear to have been met. *See Paulson v. County of Pierce,* 99 Wn.2d 645, 650, 664 P.2d 1202, *appeal dismissed,* 104 S. Ct. 386 (1983).

personal residence—still stands.

Although we acknowledge that the *Kennedy* court did not review or invalidate this portion of the ordinance, we hold that this limitation itself amounts to an unconstitutional taking. We can see no good reason to restrict an owner's use to occupancy of the moorage site for his or her own personal residence. Such a requirement suffers from the same infirmity as the "fair market value" provision, which we have already held to be unconstitutional. It essentially requires the moorage owner to either buy the existing houseboat, or purchase or build a new one in order to use the property.[5] We, therefore, hold that section 3(7) of ordinance 109280, insofar as it requires the moorage owner to occupy the moorage site with a personal residence, is unconstitutional and unavailable as an affirmative defense in an unlawful detainer action.

Lee next contends that section 4 of ordinance 109280, the "retaliatory eviction" provision, is also unconstitutional because it effectively precludes the moorage owner from ever occupying the moorage site with his or her own residence. If section 4 actually has this effect, it indeed constitutes an unconstitutional taking under *Kennedy*.

Section 4 states, in pertinent part:

> The owner or operator of a floating home moorage *shall not take or threaten to take reprisals or retaliatory action* against a floating home owner *because of any good faith exercise of such floating home owner's legal rights in relation to his or her floating home.*

(Italics ours.) Ordinance 109280, § 4. The section then proceeds to list certain actions that constitute "reprisal or retaliatory action," including demanding removal of a floating home from its moorage site. Lee suggests that because a tenant's mere residence at his home constitutes a good faith exercise of a legal right, a landlord's demand that the tenant evict will, therefore, *always* be retaliatory. Although

---

[5]Other legitimate uses consistent with current zoning regulations are effectively prohibited by this provision. For example, a moorage owner cannot evict a tenant and simply leave the site vacant.

section 4 does not define the phrase "good faith exercise of . . . legal rights", appellant's construction is certainly not compelled by the language of the ordinance. Moreover, it is well settled that a court should adopt a construction of a statute that renders it constitutional, whenever possible. *Grant v. Spellman*, 99 Wn.2d 815, 819, 664 P.2d 1227 (1983); 2A C. Sands, *Statutory Construction* § 45.11 (4th ed. 1973). Accordingly, we read section 4 to require that the tenant have exercised some legal right, such as reporting housing code violations, and that the landlord have demanded removal of the tenant's houseboat because of that act.

Lee next argues that there was no substantial evidence to support either of Sauvage's affirmative defenses. Since we have held that subsection 7 of ordinance 109280 is unconstitutional, it is irrelevant that Lee may not have intended to reside at the moorage.

■ However, there was sufficient evidence to support the retaliatory eviction defense. In July 1980, Sauvage petitioned for a fact–finding proceeding in response to Lee's notification of a rent increase noted above. This constituted a good faith exercise of a legal right in relation to the owner's floating home. In addition, there was evidence that Lee had exhibited hostility toward Sauvage because of an earlier dispute between Sauvage and Lee's parents. Because Lee's challenge is to the sufficiency of the evidence, the court must view the evidence in the light most favorable to Sauvage, and all material evidence in her favor should be taken as true. *See Flavorland Indus., Inc. v. Schumacker*, 32 Wn. App. 428, 432–33, 647 P.2d 1062 (1982). Under this standard, it cannot be said that the evidence was insufficient to support the retaliation defense.

Lee also argues that his alleged retaliatory intent is irrelevant under the ordinance if it is established that his attempted eviction of Sauvage was based upon one of the permissible grounds listed in section 3. In other words, Lee contends that even if he intended to retaliate, the eviction was permissible if he also intended to occupy the moorage

with his personal residence. We are unable to accept Lee's construction of the ordinance. Section 3 sets forth the permissible grounds for eviction. Section 4 additionally requires that any attempted eviction not be tainted by a retaliatory intent. Nothing in the ordinance suggests that if a moorage owner complies with section 3 (*i.e.*, that the eviction is for a permissible purpose) he or she is thereby exempted from section 4.

█ Finally, Lee assigns error to the denial of his motion for a new trial, contending that the trial court gave several erroneous jury instructions and erroneously admitted certain testimony and exhibits into evidence. With respect to the evidentiary matters, we find no error. The admission or exclusion of evidence on relevancy grounds is within the trial court's discretion, and reversal is appropriate only for manifest abuse. *Maehren v. Seattle,* 92 Wn.2d 480, 488, 599 P.2d 1255 (1979), *cert. denied,* 452 U.S. 938 (1981). After a thorough review of the record, we find no such abuse. We also find no error with respect to the jury instructions.

### Sauvage's Cross Appeal

Sauvage assigns error to the denial of her motion for summary judgment. She first contends that if section 3(7) of ordinance 109280 is constitutional, her eviction is absolutely barred regardless of Lee's intent, as it is undisputed that Lee neither tried to find an alternate moorage nor offered to pay her fair market value. Because we hold that these requirements are unconstitutional, however, we reject this argument.

Sauvage next contends that even if these provisions are unconstitutional, the requirement that 6 months' notice be given is not. Because only 4 months' notice was actually given, Sauvage argues that summary judgment is still appropriate. While we agree that there is nothing unconstitutional about the notice requirement, Sauvage's eviction notice was received on November 29, 1980, almost 2 months before section 3(7) was enacted. Lee complied with the 4–month notice requirement of section 3(6) which was then

applicable.

Sauvage next contends that because Lee only owned a one–fifth interest in the moorage, he was not a "moorage owner" under the ordinance and, therefore, was not entitled to evict. This argument is meritless. On its face, the ordinance does not purport to distinguish among various degrees of ownership. Sauvage's motion for summary judgment was properly denied.

■ Finally, Sauvage assigns error to the trial court's refusal to award her reasonable attorney's fees and certain deposition costs. Because the matter may surface again on remand, we will address this issue. The cost of pretrial depositions may not be awarded to the prevailing party if they are used merely for trial preparation, *Gabel v. Koba*, 1 Wn. App. 684, 693, 463 P.2d 237 (1969), or for impeachment purposes. *Washington Natural Gas Co. v. Sea–Con Corp.*, 34 Wn. App. 879, 881, 665 P.2d 405 (1983). To be taxable, the deposition must be used as substantive evidence. *Structurals Northwest, Ltd. v. Fifth & Park Place, Inc.*, 33 Wn. App. 710, 719, 658 P.2d 679 (1983). Here, the Albert Lee deposition was used for impeachment purposes,[6] and the Crouch deposition was never published. Thus, the trial court did not err in refusing to award costs as to these depositions.

■ The court also correctly refused to award attorney's fees. A prevailing party may recover fees only when authorized by statute, private agreement, or a recognized ground of equity. *Pennsylvania Life Ins. Co. v. Department of Empl. Sec.*, 97 Wn.2d 412, 413, 645 P.2d 693 (1982). The Washington courts have recognized the losing party's bad faith, *Seals v. Seals*, 22 Wn. App. 652, 658, 590 P.2d 1301 (1979), or oppressive conduct, *Snyder v. Tompkins*, 20 Wn. App. 167, 174–75, 579 P.2d 994 (1978), as equitable grounds for the award of attorney's fees. Here, the trial court was entitled to conclude that Lee acted nei-

---

[6]For the same reason, we agree with Lee that the trial court erred in awarding $342.10 for the deposition of James Lee.

ther oppressively or with bad faith. The court did not abuse its discretion in denying fees.

Accordingly, the judgment is reversed and the case is remanded for a new trial. In view of our disposition of the issues in this case, the only issue on retrial will be if Lee's attempt to evict Sauvage was retaliatory.

CALLOW, J., concurs.

RINGOLD, J. (dissenting)—The extensive litigation resulting from the popularity of houseboat living and the finite number of moorage sites graphically illustrates the necessity of an appropriate exercise of the regulatory power of government in this area. In enacting the challenged ordinance, the Seattle City Council noted that

> federal, state and local legislation concerning shorelands has had the effect of limiting the number of available floating home moorage sites and has resulted in a situation in which every available floating home moorage within the City is occupied, and there is little prospect that new floating home moorages will be developed; . . . [that] the ownership of a floating home requires a substantial investment, and a floating home is not readily mobile; and the required removal of a floating home from its moorage when no other moorage is readily available will destroy the value of such property except for its value as scrap; . . . [that] floating homes are a unique part of the environment and life of The City of Seattle, and some regulation of moorage relationships is needed to preserve floating homes and to maintain the public peace and safety in the floating home community . . .

Preamble, ordinance 109280.

The majority fails to apply the analysis necessary to determine whether economic regulations enacted by a legislative body are constitutional. Any ordinance enacted by a municipality in the exercise of its police powers is presumed constitutional and the party challenging it has the burden of overcoming this presumption. *Granat v. Keasler,* 99 Wn.2d 564, 568, 663 P.2d 830, *cert. denied,* 104 S. Ct. 549 (1983). An exercise of the police power is valid if it

meets the judicial test of reasonableness. This test requires that (1) the regulation be reasonably necessary in the interest of the public health, safety, morals and the general welfare, (2) the regulation be substantially related to the evil sought to be cured, (3) the classes of persons regulated be reasonably related to the legitimate object of the legislation, and (4) the regulation not be unnecessarily prohibitory and confiscatory. *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 154–55, 459 P.2d 937 (1969).

In *Kennedy v. Seattle,* 94 Wn.2d 376, 617 P.2d 713 (1980), the Supreme Court considered the validity of section 2(6)[7] of ordinance 107012, the predecessor to the ordinance challenged here. Applying the *Petstel* test, the *Kennedy* court found: (1) The ordinance was reasonably necessary in the interest of public safety and welfare because it protected a "unique part of the environment and life of the City" and its benefits inured to all citizens of Seattle; (2) by restricting the moorage owner's right to evict a houseboat tenant, the ordinance was substantially related to the evil sought to be cured, destruction of the houseboat community; and (3) the class of persons regulated was appropriate because houseboat moorage lessors are sufficiently different from other landlords to warrant regulation of them as a separate class. *Kennedy,* at 381–82. The court held the ordinance unconstitutional, however, because it did not meet the fourth requirement of *Petstel.* The court reasoned that the absence of alternative moorage sites rendered eviction impossible and gave the houseboat owner

---

[7]Section 2(6) permitted eviction when:

"The floating home owner is directed by the moorage owner to remove his or her home from its moorage site by a written notice given at least six months prior to the demanded date of removal where the purpose of such demand for removal is to permit the moorage owner to personally occupy such moorage site with a floating home to be used as such owner's residence, provided that such demand for removal is not contrary to any existing lease agreement between the moorage owner and such floating home owner *and that such moorage owner locates for the displaced floating home owner another lawful moorage site within The City of Seattle.*" *Kennedy v. Seattle,* 94 Wn.2d 376, 385–86, 617 P.2d 713 (1980) (quoting ordinance 107012, § 2(6)).

a perpetual right to use the moorage. Thus, the ordinance amounted to a taking of the moorage owner's property. *Kennedy,* at 386. In *Granat v. Keasler, supra,* the court held section 3(6) of ordinance 109280 unconstitutional on the same ground.

The regulation challenged here is section 3(7) of ordinance 109280, as amended by ordinance 109630:

> Notwithstanding any other provision of this Section, it shall be lawful for a floating home moorage owner to demand the removal of a floating home from a moorage site by giving the floating home owner at least six months' written notice, when the purpose of such demand is to permit the moorage owner to use the moorage site for a floating home which will be occupied by the moorage owner as his or her own residence; provided that such floating home moorage owner either:
>
> (a) locates another lawful floating home moorage site within the city for the displaced floating home, or
>
> (b) agrees in writing to compensate the displaced floating home owner for damages caused by the removal of such floating home from the moorage site; said damages not to exceed the fair market value of the floating home with a moorage site prior to eviction.

As in *Kennedy,* the ordinance meets the first three requirements of the *Petstel* test. The issue is whether the eviction restrictions in section 3(7) are so prohibitory or confiscatory as to constitute a taking or damaging of private property for public use in violation of Const. art. 1, § 16 (amend. 9) and the fifth amendment to the United States Constitution. As the court stated in *Maple Leaf Invs., Inc. v. Department of Ecology,* 88 Wn.2d 726, 731, 565 P.2d 1162 (1977):

> The question essentially is one of social policy which requires the balancing of the public interest in regulating the use of private property against the interests of private landowners not to be encumbered by restrictions on the use of their property.

Unlike the eviction provisions struck down in *Kennedy* and *Granat,* section 3(7) does not deprive the moorage owner of any personal use of the moorage nor give the

houseboat owner a perpetual right to use the moorage. It allows the moorage owner to evict a tenant when the owner plans to personally reside at the moorage[8] and either locates another site for the tenant or pays damages caused by the eviction. This is not the only basis under the ordinance permitting evictions of a houseboat tenant. Subsections 1 through 5 permit eviction when the tenant fails to pay rent, fails to comply with the reasonable terms and conditions of the tenancy, or fails to abate a nuisance, and when the moorage owner intends to convert the property to commercial use.

The ordinance does impose burdens on moorage site owners not shared by other landowners. Considering the total requirements of the ordinance, however, section 3(7) is a legitimate and narrowly drawn restriction which balances the interests of both the moorage and houseboat owners. *See Maple Leaf.*

I would hold that the provisions of the ordinance as presently formulated are valid and would affirm the judgment.

Reconsideration denied December 5, 1984.

---

[8]The majority also invalidates this requirement as an unconstitutional taking. Lee claims that he does intend to personally occupy the moorage site and presented substantial evidence to support this claim. Therefore, the validity of this requirement is not before us. In any event, this requirement is entirely reasonable. It does no more than preclude the eviction of a tenant for the purpose of renting the property to another person or leaving the moorage site vacant. Given the paucity of available moorage sites and the substantial investment houseboat owners have in their floating homes, the City could legitimately conclude the public interest requires that this investment be protected and that all available sites be used for houseboat moorage.