[No. 33976.   Department Two.   May 9, 1957.]

JANICE HELEN LUNZ, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 310 P. (2d) 880.

*Robert C. Strong,* for appellant.

*The Attorney General, Edwin R. Roberts* and *Fred R. Butterworth, Assistants,* for respondent.

ROSELLINI, J.—This is an appeal by Janice Helen Lunz, widow of Ewald J. Lunz, from a judgment of the superior court for King county, entered on the verdict of a jury, affirming an order of the board of the department of labor and industries, sustaining the supervisor's rejection of Mrs. Lunz' claim for a widow's pension.

On March 18, 1953, Ewald J. Lunz, an employee of Auto-Matic Wash, Inc., was fatally injured in an automobile accident which occurred on Highway 99 between Mt. Vernon and Everett, Washington. His widow filed a claim for a pension with the department of labor and industries on February 25, 1954, alleging that her husband was in the course of his employment at the time of the accident. This claim was rejected by the supervisor of industrial insurance on June 23, 1954, on two grounds: first, that Mr. Lunz was not in the course of his employment, and second, that at the time of his fatal injury he was engaged in the commission of the crimes of driving while under the influence of intoxicating liquor and of driving at a high and reckless rate of speed.

Mrs. Lunz appealed to the board of industrial insurance appeals, which entered its written opinion, findings, and order on June 22, 1955, sustaining the supervisor's order on the ground that Mr. Lunz was not in the course of his employment when the accident occurred. Having ruled

the claim out on this ground, the board found it unnecessary to decide the question of whether the claim should be rejected because Mr. Lunz was engaged in committing a crime or crimes at the time of the accident.

Thereafter, Mrs. Lunz appealed to the superior court of King county; and, after hearing the record made before the examiner, a jury returned a verdict upholding the decision of the board. From the judgment entered on that verdict, Mrs. Lunz has appealed, alleging error in the admission of certain testimony, the giving of certain instructions and the failure to give other requested instructions.

■ Most of these objections pertain to the question which was not decided by the board, that is, whether Mr. Lunz was committing a crime at the time of the accident. That question was not before the superior court, since upon review of the industrial insurance proceedings by the courts, the only lawful inquiry is with reference to the question or questions which have been actually decided by the board. *Leary v. Department of Labor & Industries*, 18 Wn. (2d) 532, 140 P. (2d) 292. See *Department of Labor & Industries v. Cook*, 44 Wn. (2d) 671, 269 P. (2d) 962.

The trial court instructed the jury:

"The question to be decided by you is as follows: Was Ewald J. Lunz in the course of his extra-hazardous employment with Auto-Matic Wash, Inc., at the time he received his fatal injury on March 18, 1953?"

However, the court also instructed that if a workman is attempting to commit, or committing a crime at the time he is injured or killed, neither he nor his widow or child is entitled to have any benefits. If, under the evidence, the jury could have found that Lunz was in the course of his employment at the time of the accident, the appellant was prejudiced by the giving of an instruction regarding the commission, or attempted commission, of a crime. If, on the other hand, there was no substantial evidence that Lunz was in the course of his employment, the evidence and instructions objected to by the appellant did her no harm.

Aside from the matters of intoxication and reckless driving, there is little or no conflict in the evidence. Lunz was a minority shareholder in Auto-Matic Wash, Inc., and was employed as superintendent of its Seattle plant on March 18, 1953. The principal business of the corporation was washing cars, but it was also authorized under its articles of incorporation to engage in the business of selling automobile accessories. Lunz' duties, as described by the president of the company, were as follows:

"In his work he was to hire and fire the men and run the plant, do anything that was to the interests of the company, in purchasing various things we used there and things we sell as well as the promotion — as well as to try and promote the business and increase the volume."

In carrying out his duties, Lunz was authorized to use his personal car, and he was reimbursed therefor on a mileage basis. He had purchased a new 1953 De Soto automobile shortly prior to March 18, 1953, and on that date he and his brother-in-law, Joe Renick, also an employee of the company, drove Lunz' automobile to the home of his brother, Layton Lunz, on Lake Campbell near Anacortes, Washington, arriving at about two thirty p. m. The purpose of the trip was to deliver four automobile tires to Peter S. Benson, the father of Mrs. Layton Lunz, who lived with his daughter and son-in-law. Lunz and Renick remained at the home of Layton Lunz until about four p. m., during which period. according to Mr. Benson, they had "a couple of highballs."

The three of them then drove the new car for a short ride up the Deception Pass highway to allow Mr. Benson to try it out. Then Mr. Benson drove Lunz and his brother-in-law from the Layton Lunz home to the Turkey House, a restaurant on the main highway, about five miles south of Mt. Vernon, arriving there at about five p. m. After eating dinner around six p. m., Lunz and Renick drove in the new automobile south toward Seattle. At a point on the highway south of the Stillaguamish bridge, some ten to twelve miles south of the Turkey House restaurant, Lunz lost control of

his car and it went off the highway and overturned. He was fatally injured in that accident.

It was stipulated between the parties that Lunz' work as superintendent of the Seattle plant of the Auto-Matic Wash, Inc., was covered employment under the provisions of RCW 51.32.030 relating to individual employers or members or officers of corporate employers.

Eldon Anderson, president of the company, testified that he had no knowledge of this particular transaction and did not know that the deceased had left the plant on the day in question. He stated, however, that the company did sell tires occasionally although it had discontinued stocking them. He further testified on this subject on cross-examination as follows:

"Q. Did you not tell the investigator, Mr. Boyd Harrod, on approximately June 3 or just prior thereto that very few tires were sold and most of them to the employees or their relatives? A. That is probably true in a sense. I don't know that I said it, but I might have. Q. And you on occasions also have purchased tires for business friends in return for a favor from them, is that correct? A. That is true. Q. That as a general rule these transactions did not go through the company books; in other words, to obviate the gross sales tax, is that true? A. No, I don't think that is true. It may have been in some cases.

"Q. Didn't you tell Mr. Harrod that as a general rule these transactions did not go through the plant's books for the reason if the transaction was entered in your books the company would be required to collect sales tax on the mentioned merchandise? A. I don't know. Q. Did you ever find in your books the purchase made or was to be made, alleged to be made by Mr. Lunz for them? A. It was impossible for them to get into the records long as the man was killed. I did not find it."

Although Anderson stated that the deceased had authority to deliver tires or go anywhere he wanted to "as long as he didn't get out of line too much, too often," he admitted that, to his knowledge, the company had never before delivered tires a distance of more than sixty miles from the plant. The record discloses that the four tires in question were purchased from J. A. Westlake and Son and

were paid for in cash. The tires were delivered to the Auto-Matic Wash plant, but the company's records do not show that they were paid for out of company funds. Mr. Benson testified that he had paid Lunz for the tires, but that he didn't remember how much he paid.

In regard to Lunz' promotional duties, Mr. Anderson testified:

"He was supposed to promote good will. We have a setup where we give away free washes and so forth among potential customers, and we put up signs along the highway to increase business from that."

The test adopted by this court for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest. *Cugini v. Department of Labor & Industries*, 31 Wn. (2d) 852, 199 P. (2d) 593; *D'Amico v. Conguista*, 24 Wn. (2d) 674, 167 P. (2d) 157; *Young v. Department of Labor & Industries*, 200 Wash. 138, 93 P. (2d) 337, 123 A.L.R. 1171.

It is plain from the evidence that the delivery of tires purchased for the accommodation of a relative, in a transaction from which the company derived no profit, was not among the duties of the superintendent as defined by the president of the company. Neither was this delivery specifically directed by the employer, nor was it among the promotional duties outlined by him. Any good will which may have been created by this accommodation would add little to that which already existed by virtue of the relationship between the parties. Furthermore, the amount of car wash business that would be given to a plant in Seattle by a customer in Anacortes, eighty miles away, would hardly justify the expenditure of an entire afternoon of the superintendent's time. The fact that the activity was tolerated by the employer does not mean that it was done in furtherance of the company's interest.

The appellant complains of the trial court's refusal to give an instruction to the effect that, if the employee's activity was appreciably beneficial to his employer, he would be in the course of his employment even though his motive was to benefit himself or a third person. The instruction requested was based upon a statement found in *Leary v. Department of Labor & Industries, supra,* wherein we quoted from Restatement of the Law of Agency, pp. 530-531, as follows:

" 'The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service, . . .' "

In the *Leary* case, we held that a gatekeeper who used his own car to move another car which was stalled in the gateway, blocking traffic, was within the scope of his employment even though his predominant motive may have been to aid the driver of the stalled car, since keeping the entrance clear was one of his duties.

■■ The rule stated was applicable to the facts of that case, but it has no application here, where there is no showing that the employee was actuated to any extent by a purpose to serve the employer's business. In addition, the requested instruction, while it quoted the rule from the Restatement correctly, contained an elaboration of it which distorted its meaning, and referred to this rule as the "definition of course of employment." It is not error to refuse an instruction which incorrectly states the law. *State v. Nyland,* 47 Wn. (2d) 240, 287 P. (2d) 345.

Inasmuch as we have held that there was no evidence which would have justified the jury in returning a verdict contrary to the board's finding that Lunz was not in the course of his employment at the time of the accident, the errors assigned to the court's rulings and instructions

pertaining to the matters of intoxication and reckless driving need not be considered.

The judgment is affirmed.

SCHWELLENBACH and DONWORTH, JJ., concur.

FOSTER, J. (concurring specially)—While I agree fully with the court's conclusion the evidence was insufficient to sustain a verdict that the decedent was in the course of his employment, this case offers no occasion to apply the rule that the superior court on review may only decide questions actually decided by the department.

The case cited, *Leary v. Department of Labor & Industries,* 18 Wn. (2d) 532, 140 P. (2d) 292, and the many others announcing similar conclusions are based upon *Cole v. Department of Labor & Industries,* 137 Wash. 538, 243 Pac. 7. Cole's claim was rejected because there was no accident. The only issue on appeal, therefore, was whether an accident had occurred or not, but the court went farther and submitted to the jury the extent of disability. This the superior court had no jurisdiction to do because that issue had not been decided by the supervisor of industrial insurance.

That is made manifestly plain by *Boone v. Department of Labor & Industries,* 174 Wash. 123, 24 P. (2d) 454, in which an application to reopen an industrial insurance claim was denied by the department on the ground there had been no increase in the disability since the closing of the claim. The court held, however, the extent of the disability inhered in the decision that there had been no increase in the disability, and, consequently, the superior court did have jurisdiction on appeal to determine the extent of the disability.

On an appeal denying the compensability of an industrial insurance claim, any evidence touching upon that issue is admissible, and it is not to be rejected upon the hypothesis that that particular facet of the inquiry had not been considered by the board. The issue is one of jurisdiction and not admissibility of evidence.

The jurisdiction of the board of industrial insurance appeals is appellate only and not original. By the terms of Laws of 1951, chapter 225, § 7, p. 685 [*cf.* RCW 51.52.070], the notice of appeal to the board of industrial insurance appeals from the decision of the supervisor of industrial insurance defines the issues in any industrial insurance appeal.

The supervisor of industrial insurance, among other things, rejected this claim on the ground the decedent was engaged in the commission of a crime at the time of his death. Evidence was received upon that issue before the board of industrial insurance appeals, and the court in instruction No. 14, set out in the margin,[2] submitted that issue to the jury to which an appropriate exception was taken. That issue was drawn in controversy by every device known to the industrial insurance law. The rule of the *Cole* case, and others following it, has to do with issues decided by the supervisor of industrial insurance, but has no possible application in this case.

HILL, C. J., concurs with FOSTER, J.

---

[2]"You are instructed that if an injury or death results to a workman from the deliberate intention of the workman himself to produce such injury or death, or while he is engaged in the attempt to commit, or the commission of a crime, neither the workman nor the widow or child of the workman shall be entitled to receive any payment whatsoever from the industrial insurance accident fund."