177 P.3d 692 (2008)
BALL-FOSTER GLASS CONTAINER COMPANY, Petitioner,
v.
Alfred GIOVANELLI and The Department of Labor and Industries of the State of Washington, Respondents.
No. 77655-5.
Supreme Court of Washington, En Banc.
Argued June 27, 2006.
Decided February 21, 2008.
*694 Amy L. Arvidson, Keehn Kunkler PLLC, Seattle, WA, for Petitioner.
Joseph Andrew Grube, Ricci Grube Aita & Breneman PLLC, Beverly Norwood Goetz, Ofc. of The Atty. Gen., Seattle, WA, for Respondents.
C. JOHNSON, J.
¶ 1 This case asks us to determine whether, under the traveling employee doctrine, a worker from out-of-state, injured while working in Washington, is entitled to workers' compensation benefits under the Industrial

FACTUAL AND PROCEDURAL HISTORY
¶ 2 Alfred Giovanelli is a highly skilled and experienced firebrick mason. Although he resides in Pennsylvania, he regularly travels around the country to work on glass furnace rebuilds. Petitioner Ball-Foster Glass Container Company (currently known as Saint-Gobain Corporation) owns and operates 18 glass container manufacturing plants around the country, including one in Seattle. Saint-Gobain Corporation (St. Gobain) scheduled a rebuild of one of its glass furnaces at its Seattle plant in 2001. Pursuant to St. Gobain's contract with the International Union of Bricklayers and Allied Craftsmen Union, half of the masons used on the rebuild were referred by the local union hall and the other half were referred by Sonny Champ Refractories, a privately owned company with whom St. Gobain regularly contracts to provide labor and supervision on rebuild projects. Thus, half of the masons hired were local and half were from out-of-state. Sonny Champ, owner of Sonny Champ Refractories, would sometimes work as superintendent for St. Gobain's rebuilds and would regularly hire Giovanelli to work as his crew foreman. Giovanelli began working on St. Gobain projects in the 1980s and worked exclusively for St. Gobain for at least five years before being injured. Test. Giovanelli, Tr. (Apr. 25, 2003) at 21-24. Giovanelli worked on five rebuilds for. St. Gobain in 1998, three in 1999, and five in 2000. Giovanelli was working on his third rebuild for St. Gobain in 2001 when he sustained the injuries underlying this claim.
¶ 3 Under the union contract, St. Gobain paid for travel to and from the work location for all of the out-of-state masons, including Giovanelli. Giovanelli was also paid his hourly wage for eight hours while traveling to Seattle and an additional eight hours for *695 traveling home. Neither the local or out-of-state masons signed any paperwork until they arrived at the plant to begin work. All of the masons were hired as Washington employees and deductions applicable to Washington employees were taken from their paychecks. St. Gobain paid the out-of-state masons a per diem of $78 for every day they were employed during the project, regardless of whether the mason was required to work that day. St. Gobain also provided Giovanelli with a rental car. St. Gobain points out that, unlike a typical St. Gobain employee, Giovanelli and the other out-of-state masons did not receive medical, dental, life insurance, or 401K benefits, nor were they reimbursed for the actual cost of hotel and meal expenses, over the per diem payment.
¶ 4 The day Giovanelli was injured he was with the superintendent of St. Gobain's Seattle project, Royce A. (Sonny) Champ. Both men were staying at the same hotel. In evidence submitted during Champ's testimony, Champ gave a statement to police that he and Giovanelli had noticed a sign that Sunday that read "Music in the Park." Board Ex. 9, Royce A. Champ statement to Det. W. Butterfield, Apr. 24, 2003.
¶ 5 While Giovanelli was expected to be available to work on Sundays, he was not scheduled to work on Sunday, August 12, 2001, the day of the accident. When the accident occurred, he and Champ had started to walk across the street directly in front of their hoteland were headed to the nearby parkwhen Giovanelli was hit and injured by a moving car. Decision and Order of the Board, Undisputed Facts (July 31, 2003) at 2-3. Giovanelli sustained serious injuries, including multiple fractures, degloving of his skin, and a head injury that resulted in permanent blindness. Giovanelli applied for workers' compensation benefits and the Department of Labor and Industries (Department) ordered St. Gobain to allow the claim.[1] St. Gobain appealed the order and, following a hearing, the industrial insurance appeals judge issued a proposed decision and order affirming the Department's order. St. Gobain appealed to the Board of Industrial Insurance Appeals (Board). The Board denied the petition for review and adopted the industrial insurance appeals judge's proposed decision and order as its own. St. Gobain appealed to the King County Superior Court. The Department moved for summary judgment. The trial court initially denied the summary judgment motion but before trial was set to begin, granted it. Relying on Shelton v. Azar, Inc., 90 Wash.App. 923, 954 P.2d 352 (1998), the trial court found Giovanelli was "in the course of employment" when he was injured because he was traveling at the direction of his employer and his travel was for a purpose benefiting the employer. Based on this finding, the trial court found there was no issue of material fact and the case could be decided as a matter of law. CR 56(c).
¶ 6 St. Gobain appealed the trial court's decision to the Court of Appeals. The Court of Appeals affirmed the trial court, and St. Gobain petitioned this court for review. Ball-Foster Glass Container Co. v. Giovanelli, 156 Wash.2d 1024, 133 P.3d 473 (2006).

ISSUE
¶ 7 Does Giovanelli qualify for workers' compensation benefits under the traveling employee doctrine?

ANALYSIS
¶ 8 Washington, like most other states, adopted a workers' compensation act nearly a century ago. See 1 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 2.08 (2006). Our workers' compensation act is a compromise between employers and workers. Dennis v. Dep't of Labor & Indus., 109 Wash.2d 467, 469, 745 P.2d 1295 (1987). Employers are liable for workplace injuries without regard to fault in exchange for limited liability, and employees forfeit common law remedies which may exceed that available under workers' compensation law, in exchange for swift and certain relief. Industrial injuries are viewed as a cost of production. Dennis, 109 Wash.2d at 470, 745 P.2d 1295.
*696 ¶ 9 Workers' compensation is a particularly dynamic field of legislative activity, as the forces of labor and industry assert their interests at each legislative session. However, while specific criteria vary from state to state and change over time, the general standard governing compensability of an injury is remarkably uniform and unchanging. The general coverage provision in the workers' compensation acts of 43 states as well as the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, all share the language first used in the "British Compensation Act formula: injury `arising out of and in the course of employment.'" 1 Larson & Larson, supra, § 3.01.
¶ 10 Washington is one of the few states that depart from the formula. Dennis, 109 Wash.2d at 480, 745 P.2d 1295. Under Washington law, there is no requirement that an injury "arise out of employment, only that the worker was within "the course of employment" when injured.[2] RCW 51.32.010. The language of the statute shows the intent of the Washington Legislature to adopt a broader and more comprehensive statute than other states. Stertz v. Indus. Ins. Comm'n, 91 Wash. 588, 594, 158 P. 256 (1916). Although the Washington standard is more lenient, the practical significance of this distinction has been lessened as the "arising out of prong in other jurisdictions has evolved from something akin to a "proximate cause" requirement to a "but for" test. 10 Larson & Larson, supra, § 3.06 (observing that some jurisdictions now apply a broader unitary "work connection test" examining whether the injury is related to a risk incidental to employment).
¶ 11 As stated by the United States Supreme Court, "the statutory phrase `arising out of and in the course of employment,' which appears in most workmen's compensation laws, is deceptively simple and litigiously prolific." Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 479, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).
¶ 12 Although each case must be resolved in view of the particular facts, over time a number of intermediate standards for evaluating whether an injury occurs "in the course of employment" have developed as courts apply this statutory language to cases presenting similar fact patterns. See Ridgway v. Combined Ins. Cos. of Am., 98 Idaho 410, 414, 565 P.2d 1367 (1977) (Bistline, J., concurring). Several doctrines address situations in which an employee is injured while off the employer's premises and/or not actually engaged in work duties.[3] The common principle underlying each of these doctrines is that it is generally not necessary that a worker was actually performing the duties for which he or she was hired at the time of an accident in order for an injury to be compensable. It is sufficient if the injury arises out of a risk that is sufficiently incidental to the conditions and circumstances of the particular employment. In doubtful cases, the act is to be construed liberally in favor of compensation for the injured worker. Mclndoe v. Dep't of Labor & Indus., 144 Wash.2d 252, 257, 26 P.3d 903 (2001).
¶ 13 Although new to this court, the traveling employee doctrine is not a novel concept. The traveling employee doctrine, also known as the "commercial traveler rule," or the "continuous coverage rule," is the prevailing view throughout the United States. See Buczynski v. Indus. Comm'n, 934 P.2d 1169, 1173 (Utah Ct.App.1997). A traveling employee is generally considered to be in the course of employment continuously during the entire trip, except during a distinct departure on a personal errand. 2 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 25.01 (2006). The rationale for this extended coverage is that when travel is an essential part of employment, the risks associated with the necessity of eating, sleeping, and ministering to personal needs away from home are an incident of the employment even though the employee is not actually working at the time of injury. Buczynski, 934 P.2d at 1174 (quoting State Accident Ins. Fund Corp. v. Reel, 303 Or. *697 210, 735 P.2d 364 (1987)). The rule recognizes that a traveling employee is subjected to `"hazards [he or] she would otherwise have the option of avoiding,'" and that the hazards of travel become the hazards of the employment. Chavez v. ABF Freight, Sys. Inc., 2001-NMCA-39, 130 N.M. 524, 528, 27 P.3d 1011 (internal quotation marks omitted) (quoting Ramirez v. Dawson Prod. Partners, Inc., 2000-NMCA-011, 128 N.M. 601, ¶ 12, 995 P.2d 1043).
¶ 14 In Shelton, the Court of Appeals adopted the traveling employee doctrine, stating the general rule as: "When employees are required by their employers to travel to distant jobsites, courts generally hold that they are within the course of their employment throughout the trip, unless they are pursuing a distinctly personal activity." Shelton, 90 Wash.App. at 933, 954 P.2d 352 (emphasis added).
¶ 15 Consistent with our decisions recognizing the exceptions to the coming and going rule, we now recognize that traveling employees are entitled to expanded coverage for travel-related injuries. Of course, the traveling employee doctrine does not require coverage for every injury. A traveling employee may depart on a personal errand just like any other type of employee, thus losing the right to compensation benefits during such departures. Silver Eng'g Works, Inc. v. Simmons, 180 Colo. 309, 505 P.2d 966 (1973). Both the nature of the activity and the manner in which the employee performs it must be reasonable. See Ray Bell Const. Co. v. King, 281 Ga. 853, 642 S.E.2d 841 (2007).
¶ 16 In evaluating whether a worker has left the course of employment, we believe the proper inquiry is whether the employee was pursuing normal creature comforts and reasonably comprehended necessities or strictly personal amusement ventures. Although distinguishing between reasonable personal ministrations and purely personal amusement ventures may be difficult, courts have had little difficulty denying compensation for unusual or unreasonable activities. See, e.g., E. Airlines v. Rigdon, 543 So.2d 822 (Fla.Dist.Ct.App.1989) (denying compensation for employee injured during skiing trip at resort over 50 miles from hotel); Buczynski, 934 P.2d 1169 (hot tub injury occurring in hotel 150 miles away from convention center and days before convention not compensable).
¶ 17 There will, of course, be difficult cases where reasonable minds may differ. Therefore, in order to provide guidance to the courts of this state we believe the approach followed in Texas, which has a workers' compensation act similar to ours, strikes the proper balance. See Shelton v. Standard Ins. Co., 389 S.W.2d 290 (Tex.1965). The test used by Texas courts is whether the injury `"has its origin in a risk created by the necessity of sleeping or eating away from home. . . .'" No. River Ins. Co. v. Purdy, 733 S.W.2d 630, 632-33 (Tex.Ct.App.1987) (alterations in original) (quoting Shelton, 389 S.W.2d at 293). This test focuses the court's inquiry upon whether the injury relates to a risk incidental to employment or from an entirely independent act.
¶ 18 Given that the rationale of the traveling employee doctrine is that an employee is entitled to increased coverage commensurate with the increased risk associated with travel, in evaluating the compensability of injuries occurring off-duty, the focus should be whether the injury is fairly attributable to the increased risks of travel. Thus, we believe the standard for determining whether an activity is a "distinct departure" should be consistent with the standard applicable to injuries that occur on the jobsite, while the employee is not actually engaged in work, such as during a rest break or lunch period. This is consistent with the reasoning of decisions by this court, the Court of Appeals, and the Board.
¶ 19 The Board has recognized that an injury resulting from a wholly independent act of the employee for his own benefit or gain, particularly where the employee's act has no connection with the employee's work, is generally not compensable. See Young v. Dep't of Labor & Indus., 200 Wash. 138, 93 P.2d 337 (1939). The Board has observed, "[w]e believe the Legislature by enacting RCW 51.32.015 [extending coverage to lunch period injuries on the jobsite] intended to give the same coverage during the lunch *698 hour as that applicable during the work period." In re Morrill, No. 29,704, Bd. of Indus. Ins. Appeals (Wash. Dec. 7, 1970). The Board's analysis is sound and applies as well to the traveling employee doctrine.
¶ 20 The relevant inquiry for purposes of workers' compensation is whether the injury is related to a risk of employment. A general reasonableness standard without a finding of a connection to the employee's work would go too far in covering the social and recreational activities of traveling employees. The injury must have its origin in a travel related risk. A rule allowing coverage for all reasonable activities untethers the concept of employment risk from the "course of employment" analysis. Since the traveling employee doctrine is an exception to the general rule that injury is not compensable when it occurs off the employer's premises, when the worker is not actually engaging in work activity, coverage should be limited to injuries fairly attributable to the risks of travel.

Application

Giovanelli Is a Traveling Employee
¶ 21 Applying the traveling employee doctrine to the facts of this case, we must first determine whether Giovanelli falls within the category of "traveling employee." There are two widely recognized definitions of a traveling employee. Under Larson's formulation of the rule, a traveling employee is one "whose work entails travel away from the employer's premises." 2 LARSON & LARSON, supra, § 25.01. An alternate definition provides: "A traveling employee is one whose job requires travel from place to place or to a place away from a permanent residence or the employee's place of business." 2 JOHN P. LUDINGTON, MODERN WORKERS COMPENSATION § 111:15 (Matthew J. Canavan ed., 1993).
¶ 22 The traveling salesperson and the long-haul truck driver are prototypical examples of traveling employees. However, workers who have no fixed site of employment or whose business is travel are not the only categories of employees who fall within the definition. Traveling employees also include those on temporary assignment at a fixed location.
¶ 23 Courts routinely apply the traveling employee doctrine to hourly wage workers who travel to a fixed site to perform a job assignment of temporary duration. This scenario frequently arises in the context of construction workers sent to work on a discrete project. See, e.g., Brown v. Palmer Constr. Co., 295 A.2d 263 (Me.1972). Courts have little difficulty treating itinerant construction workers as traveling employees when the worker is required, as a condition of the employment, to travel to a distant jobsite, away from home, and find overnight lodging, particularly when the employer provides compensation for the worker's travel expenses.
¶ 24 For example, in Olinger Construction Co. v. Mosbey, 427 N.E.2d 910 (Ind.App. 1981), a construction worker was assigned to a jobsite 150 miles from his home. He lived in a motel while working on the project where, one night, a former co-worker entered his room and stabbed him. The Indiana court held that his death was compensable. The court rejected the employer's argument that the traveling employee rule was inapplicable to a worker assigned to a fixed jobsite for a job of temporary duration, stating, "because of his job . . . his activities, such as eating and sleeping in a distant location, are done for the benefit of the employer." Olinger, 427 N.E.2d at 915.
¶ 25 St. Gobain contends that Giovanelli should be treated as a "local hire" rather than as a traveling employee. They contrast his situation with that of Ernie Peters, a permanent St. Gobain employee who traveled from the corporate headquarters in Muncie, Indiana to oversee the furnace rebuild. Unlike Peters, St. Gobain argues, Giovanelli was not "required" to accept the work assignment in Seattle, but could have elected to stay home.
¶ 26 A distinction based on whether an employee had the option to decline a work assignment that entails travel would resurrect the assumption of risk doctrine, a tort concept that is inapt in evaluating the compensability of a work-related injury. Workers' *699 compensation acts were in great part necessitated by the judicial foreclosure of common law remedies for injured workers through application of the assumption of risk doctrine. The adoption of the IIA represents the rejection of the assumption of risk doctrine in favor of no fault insurance for work-related injuries. No distinction may be drawn between an employee who volunteers for a job that entails travel and one who is "required" by the employer to do so. The question is whether the job assignment entails travel such that the risks of travel become part of the risks of employment.
¶ 27 A more difficult issue is whether a worker who accepts a series of temporary assignments, with breaks in between, can be viewed as a traveling employee. As noted, there are two definitions of a "traveling employee." Giovanelli clearly qualifies under the first definition, as "one whose job requires travel from place to place or to a place away from a permanent residence or the employee's place of business." 2 MODERN WORKERS COMPENSATION, supra, § 111:15. Giovanelli's job assignment to Seattle required him to travel to a place away from his permanent residence. In recognition of that fact, St. Gobain agreed not only to reimburse him for his travel expenses, but also to compensate him for making the journey itself. It paid him for his travel time to and from Seattle and a per diem during his entire stay in Seattle, including his days off.
¶ 28 Under Larson's formulation, which is more widely relied upon by courts, a traveling employee is one who travels "away from" an employer's premises. 2 LARSON & LARSON, supra, § 25.01. Viewing Giovanelli's Seattle-based job assignment in isolation, he was hired to travel to, not away from, the employer's premises, and thus falls outside the definition. However, considering the nature and history of Giovanelli's employment relationship with St. Gobain, he qualifies as a traveling employee even under Larson's more restrictive test.
¶ 29 Chicago Bridge & Iron v. Industrial Commission, 248 Ill.App.3d 687, 618 N.E.2d 1143, 188 Ill.Dec. 573 (1993) involved an employee, like Giovanelli, who worked at different jobsites on behalf of his employer to complete short-term projects requiring his expertise. While en route to a job assignment, he was injured in a traffic accident. In concluding the worker was entitled to coverage as a traveling employee, the Illinois court considered the nature of the employment relationship as a whole, rather than focusing narrowly on the particular job assignment. In, view of the worker's ongoing and exclusive relationship with the employer, the court concluded that he qualified as a traveling employee, notwithstanding the breaks in employment between job assignments.
¶ 30 Similarly, Atkins v. Workmen's Compensation Appeal Board, 651 A.2d 694 (Pa. Commw.1994), involved a construction worker who was sent to jobsites in different states to work on projects of limited duration. Based on a claim filed in Pennsylvania for an injury while on a job in Georgia, the court concluded that the worker's job was not principally localized anywhere in view of the worker's ongoing relationship with his employer.
¶ 31 What Chicago Bridge and Atkins demonstrate is that in the context of determining an injured worker's eligibility for workers' compensation, courts should examine the nature of the employment relationship with a wide angle lens, rather than narrowly focusing on a discrete job assignment or period of employment.
¶ 32 Accordingly, in evaluating whether Giovanelli is a traveling employee, the proper focus is not Giovanelli's particular job assignment to St. Gobain's Seattle plant, but his ongoing employment relationship with St. Gobain, the multinational corporation, which has 18 glass manufacturing plants nationwide. Like the workers in Chicago Bridge and Atkins, Giovanelli had an ongoing and exclusive employment relationship with his employer. Giovanelli worked for St. Gobain more than 15 years, exclusively for the previous five years. His job assignments were coordinated and travel expenses were authorized and reimbursed through St. Gobain's headquarters in Muncie, Indiana. St. Gobain contemplated that Giovanelli would return home after the Seattle job was finished, until it was time to travel to the next scheduled furnace rebuild. For all of its furnace rebuilds, *700 St. Gobain relied on Giovanelli's skill and expertise to help ensure the expeditious completion of each project. Failing to recognize Giovanelli as a traveling employee under the facts of this case would be to elevate form over substance, contrary to the remedial purpose of our IIA.
¶ 33 The record is clear: Giovanelli did not merely leave home to seek out better employment. Rather, St. Gobain, through its agent, Sonny Champ, sought him out at his Pennsylvania home and offered him a temporary assignment in Seattle just as it had done numerous times over many years. The terms of the offer were that Giovanelli would fly to Seattle on a specified date, after arranging his flight through the corporate office in Indiana, receive travel pay as well as reimbursement of travel expenses, enjoy the use of a company paid rental car, and receive a per diem to defray the costs of food and lodging during his stay in Seattle.
¶ 34 St. Gobain contends that Giovanelli is not a traveling employee because it did not compensate him for his travel expenses but merely offered "premium pay" as an incentive to accept the Seattle job. It argues that treating Giovanelli as a traveling employee dramatically expands liability every time an employer offers relocation expenses or a housing subsidy. But this is not a case where Giovanelli was relocating for a job; both St. Gobain and Giovanelli expected he would fly home at the end of his assignment.
¶ 35 Giovanelli's willingness to travel from state to state to work on St. Gobain's furnace rebuilds clearly benefited St. Gobain and furthered its business. St. Gobain relied on Giovanelli, along with a small group of firebrick specialists, which it designated "travelers," to provide the expertise necessary to allow it to expeditiously complete a furnace rebuild. It is fair and proper to provide expanded coverage commensurate with the expanded risks of employment faced by Giovanelli and similarly situated "travelers" and to hold St. Gobain liable for injuries related to the expanded risks of employment.
¶ 36 As a traveling employee, Giovanelli was "in the course of employment" continuously during his trip. The next question is whether he "distinctly departed" from the course of employment at the time of his injury.

Giovanelli Did Not Distinctly Depart on a Personal Errand
¶ 37 Although Giovanelli was not required to accompany his supervisor, Sonny Champ, on a Sunday stroll, that does not mean he took himself outside the course of employment by doing so.[4] In determining whether there has been a "distinct departure" that takes one outside the course of employment, courts analogize to the "personal comfort" doctrine. Bergmann Precision, Inc. v. Indus. Comm'n, 199 Ariz. 164, 15 P.3d 276 (Ct.App.2000). "Compensation in such areas is predicated on the premise that these acts do not take the employee out of the scope of employment because they are necessary to his health and comfort." N. & L. Auto Parts Co. v. Doman, 111 So.2d 270, 272 (Fla.Dist.Ct.App.1959).
¶ 38 Under the personal comfort doctrine, a worker who engages in acts that minister to personal comfort does not thereby leave the course of employment unless the extent of the deviation is so substantial that an intent to abandon the job temporarily may be inferred or the method chosen is so unusual and unreasonable that the act cannot be considered incidental to the course of employment. 2 LARSON & LARSON, supra, ch. 21. The personal comfort doctrine applies to such acts as' eating, resting, drinking, going to the bathroom, smoking, and seeking fresh air, coolness, or warmth. 2 LARSON & LASON, supra, §§ 21.02-.07.
*701 ¶ 39 This court has recognized the principle behind the doctrine. See, e.g., Tilly v. Dep't of Labor & Indus., 52 Wash.2d 148, 324 P.2d 432 (1958) (employee remains within the course of employment during a bathroom break). The personal comfort doctrine has. also long been applied by the Board. See, e.g., In re Cawley, No. 41,864, Ed. of Indus. Ins. Appeals (Wash. May 6, 1974) (allowing claim for worker who choked on a piece of steak during lunch and died of asphyxiation).
¶ 40 The scope of activities covered by the personal comfort doctrine depends on the particular circumstances of employment. A traveling employee is entitled to broader coverage than a nontraveling employee because a traveling employee is in a significantly different position of risk than a nontraveling employee. The nontraveling employee may satisfy his personal needs without leaving the comfort of home. In contrast, the traveling employee must face the perils of the street in order to satisfy basic needs, including sleeping, eating, and seeking fresh air and exercise.
¶ 41 St. Gobain contends that Giovanelli was engaging in an "inherently dangerous" activity at the time of his injury by crossing a multilane thoroughfare without first assuring himself that he had the right of way. Seeking personal comfort should fall outside the course of employment only if the method chosen is "unusual or unreasonable." See 2 LARSON & LARSON, supra, § 21.08. The record here does not support St. Gobain's assertion that Giovanelli walked against the light, and to the extent Giovanelli's Sunday stroll was "inherently dangerous," as St. Gobain contends, much of the risk can be attributed to the circumstances of his employment. The hotel where he and the other "travelers" lodged was near SeaTac airport, adjacent to International Boulevard, which, as St. Gobain correctly states, is a busy, multilane thoroughfare. But for his need to lodge away from home during his job assignment, he would not have been there.
¶ 42 The risk of getting injured while negotiating unfamiliar streets is among the classic "street risks" covered by the traveling employee doctrine, along with hotel fires and mishaps at restaurants. Under the street risk doctrine, injuries to employees whose duties increase their exposure to the hazards of the street arise out of employment. 1 LARSON & LARSON, supra, § 6.01. If the employment occasions the worker's use of the street, the risks of the street become part of the risks of employment. Accordingly, "when a traveling employee slips in the street, or is struck by an automobile when traveling on foot or is involved in an accident while driving between the hotel and a restaurant, the injury has been held compensable." 2 LARSON & LARSON, supra, § 25.03[1] (emphasis added) (footnotes omitted).
¶ 43 St. Gobain asserts that Giovanelli is not entitled to coverage because he was not en route to a restaurant. Rather, St. Gobain contends that Giovanelli was engaged in a "purely recreational activity" at the time of his injury, which has "no business purpose." Yet the rationale of the personal comfort doctrine is that ministering to one's personal comforts is not a "purely personal" activity because attending to one's personal health and comfort furthers the employer's interest by ensuring that an employee is healthy, well-rested, and comfortable, and thus able to perform his or her job functions more efficiently. Giovanelli worked 14 hours per day, six days per week. Going for a Sunday stroll on his single day off was a reasonable activity that falls well within the personal comfort doctrine. As one court observed:
To restrict [a traveling employee] to the confines of his room or place of transacting business in his lodging place and hold that he is not covered except when either actually, directly conducting his employer's business or engaged in some activity which is strictly a necessity of life, would unduly limit the intended beneficial purpose of this remedial social insurance, which is to be liberally construed."
McDonald N. State Highway Dep't, 127 Ga. App. 171, 176, 192 S.E.2d 919 (1972).
¶ 44 In taking a Sunday stroll to the park on his single day off, Giovanelli did not "distinctly depart" from the course of employment on a "personal errand." Neither the nature of his activity nor the manner in *702 which he engaged in it was unreasonable or unusual. The risk of getting injured while crossing the street in front of his hotel during a walk to the park was a risk of his employment. Accordingly, he is entitled to compensation.
¶ 45 Providing coverage to St. Gobain's traveling employees is entirely appropriate under our IIA. St. Gobain made the economic decision to use "travelers" presumably because the value they bring to the project, in terms of greater efficiency and quality of work product, more than offsets the increased costs associated with their use. To the extent our decision increases St. Gobain's costs of production by increasing its insurance premiums for the workers engaged in the manufacture of glass containers at its plants, our IIA will operate as the legislature intended.

CONCLUSION
¶ 46 Although new to this court, the traveling employee doctrine represents the prevailing view throughout the United States, is consistent with our IIA, and has been applied by our statutorily created Board of Industrial Insurance Appeals and a specialized corps of administrative law judges. Accordingly, we adopt the traveling employee doctrine as an analytical tool to determine insurance coverage in this case. Further, we hold that a traveling employee remains in the course of employment except during a distinct departure on a personal errand. In evaluating the compensability of injuries occurring off-duty, our focus is whether the injury is fairly attributable to the increased risks of travel, given that the rationale of the traveling employee doctrine is that an employee is entitled to increased coverage commensurate with the increased risk associated with travel. The personal errand doctrine and deviation analysis appropriate to nontraveling employees applies in determining whether a traveling employee has distinctly departed from the course of employment.
¶ 47 Finally, we hold that Giovanelli was a traveling employee, in view of his ongoing, employment relationship with St. Gobain. Giovanelli did not distinctly depart from the course of employment at the time of his injury. Accordingly, he is entitled to compensation. We affirm the Court of Appeals.
WE CONCUR: SUSAN OWENS, MARY E. FAIRHURST, BARBARA A. MADSEN and TOM CHAMBERS, Justices.
J.M. JOHNSON, J. (dissenting).
¶ 48 Washington law imposes limited employer liability for employees injured while in travel status and does not collect premium for or compensate for any injury unrelated to employment. In this case, a brick worker's attendance at a music concert on a day off is not employment related and does not meet the "course of employment" test for employer liability as defined in RCW 51.08.013(1). Alfred Giovanelli was injured while wandering toward a Sunday concert, which does not qualify his expedition as "employment related"even for a travel status employee. I would reverse the Court of Appeals and remand this case. Because the majority reaches a contrary conclusion and will burden the State of Washington system with claims unrelated to employment, I dissent.

FACTS
¶ 49 Mr. Giovanelli is a mason who resides in Pennsylvania and regularly travels around the country to work on furnace rebuilds.[1]
¶ 50 Giovanelli was working on a project for Saint-Gobain in Seattle in 2001 during the week he sustained the injuries underlying this claim. Giovanelli was injured on a Sunday while he was staying at a Seattle hotel. Evidence submitted below included Sonny Champ's statement to police that he and Giovanelli were on their way to a local park that Sunday because they had noticed a sign *703 that read "Music in the Park." Board of Industrial Insurance Appeals (BIIA), Ex. 9, Sonny Champ statement to Det. W. Butterfield (Apr. 24, 2003).
¶ 51 Giovanelli did not work on this weekend, and he was not scheduled to work on the day of the accident, a Sunday. When the accident occurred, he and Champ were walking across the street in front of their hotel headed to the nearby parkwhen Giovanelli was hit and injured by a moving car. Decision and Order of the BIIA, Undisputed Facts (July 31, 2003) at 2-3.

ANALYSIS
¶ 52 The issue before the court is whether an employee can recover workers' compensation benefits for an injury that occurs during recreational activity occurring during his weekend off. Mr. Giovanelli's claim and the majority opinion may be analyzed in three steps: (1) Is the activity covered by the applicable Washington workers' compensation statute; (2) Does Washington recognize a broader traveling employee doctrine providing coverage for injury during travel; if so, is Giovanelli eligible; and (3) Is Giovanelli's activity covered as "within the course of employment" or was it a "distinct departure on a personal errand?"
A. Washington, Statutory Authority
¶ 53 Our first inquiry should be whether Washington statutory provisions allow Giovanelli's claim. The pertinent statute is our Industrial Insurance Act, Title 51 RCW. The act requires that courts construe it broadly to permit redress of employee injuries. Scott v. Dep't of Labor & Indus., 77 Wash.2d 888, 890, 468 P.2d 440 (1970); Sacred Heart Med. Ctr. v. Dep't of Labor & Indus., 92 Wash.2d 631, 635, 600 P.2d 1015 (1979). Even applying this canon of statutory interpretation, we must decide the issue using Washington statutes and case law rather than adopting any new test. The legislature is the proper forum to amend our statutes. This court must apply the statute and may consider relevant Department of Labor and Industries' rules as appropriate.
¶ 54 This case is easily resolved by analyzing the Washington Industrial Insurance Act to determine if Giovanelli was injured "in the course of employment" as required by RCW 51.08.013(1). During a Sunday off, Giovanelli and Champ decided to walk the two or three blocks from their hotel to a nearby park because they saw a flyer advertising "Music in the Park." See BIIA, Ex. 9, at 3, Witness Statement of Sonny Champ (Aug. 15, 2001) ("We were going to the park. I was going to walk over to the park with him. . . . Cause we seen a sign that said, Music in the Park."). Champ was also looking for cigarettes. Id.
¶ 55 The statute explains the scope of coverage for employment injuries in a relevant definition:
"Acting in the course of employment" means the worker acting at his or her employer's direction or in the furtherance of his or her employer's business which shall include time spent going to and from work on the jobsite, as defined in. RCW 51.32.015 and 51.36.040, insofar as such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer, except parking area. It is not necessary that at the time an injury is sustained by a worker he or she is doing the work on which his or her compensation is based or that the event is within the time limits on which industrial insurance or medical aid premiums or assessments are paid.
RCW 51.08.013(1) (emphasis added). Additionally, this same statute goes on to allow liability for injury during some social activities that are held to be within "the course of employment." However, this provision, RCW 51.08.013(2)(b), is narrow and specifically exempts most social or recreational activity, not providing coverage for:
An employee's participation in social activities, recreational or athletic activities, events, or competitions, and parties or picnics, whether or not the employer pays some or all of the costs thereof, unless: (i) The participation is during the. employee's working hours, not including paid leave; (ii) the employee was paid monetary compensation by the employer to participate; or (iii) the employee was ordered or directed by the employer to participate or reasonably *704 believed the employee was ordered or directed to participate.
(Emphasis added.)
¶ 56 Here, Giovanelli was clearly engaged in such a social or recreational activity when he decided to attend a concert on his day off. He met none of the exceptions in the statute; he was not "paid" monetary consideration by the employer or ordered or "directed" to go to the park. It was not during his scheduled work hours. Attending a concert or purchasing cigarettes on a day off does not fit into any of the three expressly limited categories of social and recreational activities that are covered within the statute as "course a employment" under (i) through (iii) quoted above.
¶ 57 It is notable that most recreational and social activity is expressly precluded from workers' compensation coverage by the quoted statute with very limited, specific exceptions. Id. Additionally, the statute defines the "course of employment" as activity during a limited travel status, i.e., to "include time spent going to and from work on the jobsite." RCW 51.08.013(1). Here, Giovanelli does not meet the statutory exceptions and is not entitled to payment from his employer under the Washington statutory scheme.
¶ 58 A next consideration is the Washington Administrative Code (WAC), which considers injuries of employees (arguably) on travel status. A particularly germane section explains which injuries are considered work related and which are not. See WAC 296-27-01103(2)(f). The regulation reads in relevant part:
How do I decide whether an injury or illness is work-related if the employee is on travel status at the time the injury or illness occurs? Injuries and illnesses that occur while an employee is on travel status are work-related if, at the time of the injury or illness, the employee was engaged in work activities "in the interest of the employer." Examples of such activities include travel to and from customer contacts, conducting job tasks, and entertaining or being entertained to transact, discuss, or promote business (work-related entertainment includes only entertainment activities being engaged in at the direction of the employer).
WAC 296-27-01103(2)(f) (emphasis added). The WAC then notes that a travel status employee who is checked into a motel establishes a "`home away from home'" and activities outside that "home" should be evaluated on the standard above. WAC 296-27-01105(2)(a). Giovanelli cannot prevail under this plain interpretation of Washington law adopted by the appropriate agency. His concert attendance activity was not designed to "transact, discuss, or promote business" and cannot be construed as furthering "the interest of the employer" as required by the regulation. WAC 296-27-01103(2)(f).
¶ 59 Giovanelli argues that Washington has applied a "coming and going" rule allowing coverage to employees who are injured while commuting to and from work and that such coverage applies to the current case. See Bolin v. Kitsap County, 114 Wash.2d 70, 76-77, 785 P.2d 805 (1990) (transportation to and from work is within the course of employment if it is customary or contractual and is for the mutual benefit of the employer and the employee); see also Puget Sound Energy, Inc. v. Adamo, 113 Wash.App. 166, 169, 52 P.3d 560 (2002); Westinghouse Elec. Corp. v. Dep't of Labor & Indus., 94 Wash.2d 875, 880, 621 P.2d 147 (1980). This "coming and going" rule is actually found in the statute, quoted supra, "which shall include time spent going to and from work on the jobsite." This does not cover the time of Giovanelli's injury because he was crossing a street to attend a concert, not "coming and going" to and from work. Further, there was no claim that Giovanelli's excursion to the park concert would provide even a residual benefit for the employer.
B. Washington Law Recognizes "Travel Status" Not a Broader Traveling Employee Doctrine
¶ 60 Our second inquiry is whether the scope of Washington's travel status rule extends to cover solely recreational activities. A narrow application is required by the Washington statutes, supra, which provides the appropriate definition of "travel status."
*705 ¶ 61 An employee in "travel status" is acknowledged in Washington only as defined in our statutory scheme. This status is correctly applied to employees when "coming and going" to and from the work site. Recognizing that the legislature is the appropriate forum to amend perceived deficiencies in Washington's workers' compensation laws, this court will construe that law to protect workers, but will not rewrite it.
¶ 62 Respondent notes that Professor Arthur Larson's basic definition of the traveling employee doctrine is similar to our Washington standard (but not identical). See Resp't Dep't's Answer to Pet. for Review at 12. But a fair reading of Professor Larson's analysis does not extend coverage to this case. See Pet'r's Mot. for Discretionary Review at 17-18 (arguing that Larson's definition only applies to "traveling in rental cars to the hotel, sleeping in hotels or eating in restaurants"). Larson's complete definition includes the following limitations:
An employee whose work entails travel away from the employer's premises is generally considered to be within the course of his or her employment continuously during the trip, except when there is a distinct departure on a personal errand.

2 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW ch. 25 (2006) (emphasis added). Even if applying the general principles articulated by Larson, this court logically should recognize the exception for "distinct departure on a personal errand" as an integral part of the rule. Id.
¶ 63 This construction is supported by Washington case law that defines which activities are within the course of employment. See Shelton v. Azar, Inc., 90 Wash.App. 923, 933-34, 954 P.2d 352 (1998) (citing Dep't of Labor & Indus. v. Johnson, 84 Wash.App. 275, 278, 928 P.2d 1138 (1996)).[2] Under the Azar articulation, only a limited coverage for the traveling employee is allowed by our statutes. Id. This does not extend employer liability to distinctly personal errands.
¶ 64 Our reading is also supported by the "coming and going" rule in this court's Bolin decision and the "furtherance of the employer's interest" language in Azar. Both of these standards are found in the statute RCW 51.08.013(1). The appropriate statutory interpretation of covered recreational activities is found in the WAC, supra, and is consistent with our application. See RCW 51.08.013(2)(b).
¶ 65 Professor Larson would argue that injuries that occur during a limited range of activities, such as eating at a hotel, sleeping or bathing, are usually compensable where an employee is in travel status. 2 LARSON & LARSON, supra, ch. 25. However, exclusively social activities outside of work times such as bar hopping or concert attendance are not compensable under our statutory scheme or under Larson's rule. While Larson's thesis reasonably argues for allowance for the necessities of traveling life, this court will only approve a standard that applies and comports with established Washington statutory law.
¶ 66 The limiting language in Azar derives from our statutes and limits coverage to acts that are "`"required of him by his contract of employment, or by specific direction of his employer; or . . . was engaged at the time in the furtherance of the employer's interest."'" 90 Wash.App. at 933-34, 954 P.2d 352 (alteration in original) (quoting Johnson, 84 Wash.App. at 278, 928 P.2d 1138 (quoting Lunz, 50 Wash.2d at 278, 310 P.2d 880)). Again, it is undisputed that Giovanelli and his supervisor, Champ, were on their day off. They were crossing the street to a park because they had seen a flyer advertising "Music in the Park." Champ was also looking for cigarettes. See BIIA, Ex. 9, at 3; BIIA Tr. (Apr. 25, 2003) at 45. These activities were personal, totally unrelated to the employer's interests, and on a nonwork weekend day.
*706 ¶ 67 Consistent with Washington statutes and the limitations in earlier cases, the inquiry should also consider whether Giovanelli's excursion had as a purpose to further the employer's interest. See, e.g., Hilding v. Dep't of Labor & Indus., 162 Wash. 168, 173, 298 P. 321 (1931) (this case relied on a definition similar to Azar's, holding that it is appropriate to cover injuries of employees when they occur in the furtherance of their employer's business).
¶ 68 The majority improperly frames Giovanelli's actions in narrow language, asserting that there is little distinction between covered activities like sleeping in hotels or eating in restaurants, and the uncovered activity of crossing the street on a day off.[3] Rather, a fair reading of the entire transcript shows that Giovanelli was searching for personal entertainment. The concert was an activity that was not in the furtherance of his employer's business interests.
¶ 69 Another decision requiring "performance of a beneficial duty to the employer" is found in Burris v. General Insurance Co. of America, 16 Wash.App. 73, 75, 553 P.2d 125 (1976). In that case, an employee was covered because he was injured in a private automobile driving on the way to a distant work site. Id. The court held that Burris was within the scope of employment because he was traveling at his employer's direction and the employer benefited. Id. This was statutorily covered as "going to and from work on the jobsite." RCW 51.08.013(1). Employers may be liable when they control a worker's actions or benefit from such actions, but this liability terminates when the employee engages in an independent detour.
¶ 70 Employees who must travel as part of their job description may also be covered in activities that are a necessary incident of this travel (i.e., eating, sleeping, and bathing). Even the Larson test, strictly construed, would only cover employees who travel away from the employer's premises on business trips while engaged in such activities. See 2 LARSON & LARSON, supra, § 25.01. Personal detours outside of those necessary to perform the assigned job, or necessary to travel, are not covered under Washington law.
¶ 71 I would conclude that Giovanelli is not entitled to compensation for injury when going to a concert on his weekend off under the RCW or WAC. Supporting this conclusion is another problem; Giovanelli does not qualify as an employee in travel status. "Travel status" (or traveling employees) includes only those who are required to travel for the benefit of their employer. See RCW 51.08.013,
¶ 72 Mr. Giovanelli's prior history with Saint"Gobain indicates that he was offered a job in Washington because he was an experienced brick mason with skills beneficial to Saint-Gobain. However, an employee who is not directed to be at a specific location as part or the employment, but merely leaves home to seek out better employment, is not covered.
¶ 73 Giovanelli relies on an out-of-state case (construing different statutes) to argue for coverage. See Chi. Bridge & Iron v. Indus. Comm'n, 248 Ill.App.3d 687, 618 N.E.2d 1143, 188 Ill.Dec. 573 (1993). In Chicago Bridge, the claimant was injured when he drove to a jobsite, as directed by his employer, in Minnesota. Id. at 689, 188 Ill. Dec. 573, 618 N.E.2d 1143. That court held that the claimant's 19 year exclusive history with the company was an important factor in determining that he should be treated as a traveling employee. Id. at 693, 188 Ill.Dec. 573, 618 N.E.2d 1143. Citing Chicago Bridge, Giovanelli contends that he was actually hired in Pennsylvania and that traveling to Washington was a necessary incident of employment.
¶ 74 Chicago Bridge is distinguishable because the worker in that case was based in Illinois, injured in Minnesota, and filed a workers' compensation claim in the home state of Illinois. Here, Giovanelli relies on the same case to prove the exact opposite *707 proposition: that he should receive workers' compensation benefits not in his home state, but in Washington, where the injury occurred, on his time off.
C. Travel Status Does Not Cover a Personal Errand
¶ 75 I briefly continue the analysis to consider whether Giovanelli's coverage as an employee was further restricted due to his "distinct departure on a personal errand." 2 LARSON & LARSON, supra, ch. 25.
¶ 76 The fact that an employee is paid during the excursion does not change the personal nature of the errand, which is the appropriate focus of inquiry. Giovanelli was not paid, but did receive per diem. We must inquire into the nature of the activity and whether it was in the course of employment; the mere existence of per diem pay is not controlling.[4]Belnap v. Boeing Co., 64 Wash. App. 212, 220, 823 P.2d 528 (1992) (an employee being paid his full salary while on leave does not determine whether the activity was within the course of employment).[5] Similarly, the fact that Giovanelli was eligible to work on weekends does not change the result. On these facts, Giovanelli was not working on the Sunday in question. This court must inquire whether the nature of the activity, walking to a concert in the park, was within the course of his employment.
¶ 77 A business traveler can indulge in social or recreational activities he or she chooses; however, these activities are not covered by employer liability under workmens' compensation laws.[6]
¶ 78 Application of this simple test would also relieve courts from determining whether a myriad of recreational activities are tangentially related to employment. Although courts employ several tools for statutory interpretation, these tools do not include an eraser. We must apply the entire statute, not merely that language which supports a particular position. Giovanelli's assertion that he was merely crossing the street from his hotel when injured would effectively delete the proviso "`acting at his . . . employer's direction or in the furtherance of . . . employer's business'" from the statute. RCW 51.08.013(1).
¶ 79 An excursion to attend a concert is not within the course of employment because its purpose is distinctly personal rather than business oriented. See Johnson, 84 Wash. App. at 278, 928 P.2d 1138 (Washington worker who was injured while working on a personal project at home during normal working hours, but while on paid administrative leave, was not in the course of employment).[7]
¶ 80 It is inconsistent with Washington's statutory system to allow continuous coverage for recreational activities by a travel status employee, no matter how high risk (from basketball to boating to bungee jumping). *708 Our statutory compensation scheme is based on an insurance principle; the State collects premiums for hours of paid employment, with the premium adjusted in accordance with the risk experience of the work. One underlying assumption is that time off is not ensured. While the case before this court involves a self-insured employer, the ramifications for our state workers' compensation system are serious. The majority's acceptance of Giovanelli's expansive argument will drain resources from legitimate Washington workers' claims in the future.
¶ 81 I would conclude that our statutory scheme does not require this employer to ensure employees for injury during a personal errand on a nonwork day. Giovanelli may well have a claim against the automobile driver who injured him (and he may already have collected on this claim). However, our Industrial Insurance Act coverage is not appropriately expanded by this court, a task constitutionally left to the Washington legislature.

CONCLUSION
¶ 82 The scope of coverage for travel status employees must be determined consistent with our statutes and established case law. A weekend concert excursion is not within a mason's scope of employment. The majority decision will burden our system for protecting and compensating injured Washington workers when "acting in the course of employment." For these reasons, I dissent.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, RICHARD B. SANDERS, Justice and BOBBE J. BRIDGE, Justice Pro Tem.
NOTES
[1] Because St. Gobain is a self-insured employer, St. Gobain, and not the State of Washington, is directly liable to its employees for workers' compensation benefits under RCW 51.08.173.
[2] The "arising out of" element applies, however, to occupational illnesses and diseases.
[3] See, e.g., Tilly v. Dep't of Labor & Indus., 52 Wash.2d 148, 324 P.2d 432 (1958); Young v. Dep't of Labor & Indus., 200 Wash. 138, 93 P.2d 337 (1939).
[4] The dissent states that Giovanelli was "wandering toward a Sunday concert" and a worker's "attendance at a music concert on a day off is not employment related." Dissent at 702. However, Giovanelli did not attend any concert. Although he had seen the flyer in the hotel lobby, he was simply out for a walk with his supervisor on a day they were not called in to work. Whether or not the concert actually existed that day or if Giovanelli would have even ended up there is not in the record. The dissent's focus on the concert distorts the facts of this case and takes the focus away from the relevant analysis: whether Giovanelli was indeed a traveling employee reasonably ministering to his health and comforts.
[1] Thus, unlike a Saint-Gobain (formerly Ball-Foster Glass Container Company) employee, Giovanelli and the other out-of-state masons did not receive medical, dental, life insurance, or 401K benefits nor were they reimbursed for the actual cost of hotel and meal expenses. Only deductions taken from work time paychecks were paid to Washington; the time of the injury here was not.
[2] Azar, 90 Wash.App. at 933-34, 954 P.2d 352 (an employee is in the course of employment only when "`"engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or . . . was engaged at the time in the furtherance of the employer's interest."'" (alteration in original) (quoting Johnson, 84 Wash.App. at 278, 928 P.2d 1138 (quoting Lunz v. Dep't of Labor & Indus., 50 Wash.2d 273, 278, 310 P.2d 880 (1957))).
[3] We do not accept this narrow level of abstraction (Giovanelli was merely crossing the street rather than attending a recreational outing at a park) because a risky endeavor like skydiving could be erroneously characterized as nothing more than exiting a motor vehicle. Clearly, context matters when determining whether an errand was personal or in furtherance of the employer's interest.
[4] Although Saint-Gobain is a self-insured employer, we note that per diem for all employees is not subject to labor and industry taxation.
[5] See, e.g., Belnap, 64 Wash.App. at 220, 823 P.2d 528 ("We hold that Belnap was not acting in the course of his employment with Boeing while on jury duty, notwithstanding that Boeing paid Belnap's full salary while he served as a juror; notwithstanding that Boeing's corporate image, and thus its general business interests, may incidentally have been enhanced as a result of its leave with pay policy; and notwithstanding that Boeing issued instructions to its employees as to when they were and were pot required to report to work, depending upon the time they might be released from jury duty by the court on any given day." (emphasis added)).
[6] To be covered within the scope of employment, the employer must derive a substantial direct benefit from the recreational activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life. 2 LARSON & LARSON, supra, ch. 22. On the other hand, in Tennessee, a recreational or social activity is covered only if the activity was impliedly required by the employer. See, e.g., Young v. Taylor-White, LLC, 181 S.W.3d 324, 329 (Tenn.2005) (declining to use the Larson test, instead holding that the question should turn on whether participation in a recreational event was voluntary or was impliedly required as part of one's employment).
[7] "The Department urges us to focus narrowly on Johnson's specific activity at the time of the injury. It argues that if that activity was not required by his employment or done at the direction of his employer, then Johnson was not covered. We agree with the Department that our focus should be narrow." Johnson, 84 Wash.App. at 279, 928 P.2d 1138 (emphasis added).