# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Peters,                              :
                          Petitioner          :
                                              :
                  v.                          :
                                              :
Workers' Compensation Appeal Board            :
(Cintas Corporation),                         :    No. 1835 C.D. 2017
                          Respondent          :    Argued: March 13, 2019


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY[1]                              FILED:  July 18, 2019


Jonathan Peters (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) November 16, 2017 order affirming the WC Judge's (WCJ) decision dismissing his Claim Petition. The issue before this Court is whether the Board erred in determining that Claimant was not in the course and scope of his employment when his injury occurred.[2] After review, we affirm.

---

[1] This matter was reassigned to the author on June 4, 2019.

[2] In his Statement of Questions Involved, Claimant presents three issues: (1) whether the Board erred by failing to apply the applicable legal standard for a traveling employee; (2) whether the Board abused its discretion by differentiating between mandatory and non-mandatory work functions; and (3) whether the Board erred or abused its discretion by determining that Claimant was not in the course and scope of his employment. *See* Claimant Br. at 4. Because Claimant's first and second issues are subsumed in this Court's analysis of the third issue, they have been combined therein.

Cintas Corporation (Employer) employed Claimant as a uniform sales representative. Claimant's home branch was located in Allentown, although Claimant would also work from home as necessary. Claimant's job duties entailed cold calling potential prospects, scheduling appointments, meeting with contacts to present the products, and eventually closing the sale and negotiating the contracts. His workweek included some time in the office on Monday mornings, Tuesdays, and Wednesday mornings to set the appointments, and in the field the remainder of the week.

On February 27, 2015, a full sales day, Claimant was in the northern portion of his territory which included Pottsville, Orwigsburg, and Tower City. After his last appointment that day he drove to Allentown to attend a celebration with co-workers at the Tilted Kilt. On the way, Claimant passed the exit for his home and continued to drive to the Tilted Kilt. It is disputed how long Claimant stayed at the Tilted Kilt. While driving home, Claimant was involved in a motor vehicle accident from which he sustained multiple injuries.

On December 29, 2015, Claimant filed the Claim Petition seeking payment of partial disability benefits from February 28 to April 2, 2015 and total disability as of April 3, 2015. Employer filed an Answer denying the material averments. The WCJ held hearings on February 10 and April 1, 2016. On November 1, 2016, the WCJ denied and dismissed the Claim Petition concluding that Claimant failed to meet his burden of proving that he was in the course and scope of employment at the time of his motor vehicle accident. Claimant appealed to the Board. On November 16, 2017, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[3]

---

[3] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent

Claimant argues that he was in the course and scope of employment at the time of the accident because he was a traveling employee on his way home from a work-sponsored event in a work van. Employer responds that because Claimant made a clear departure from his employment, Claimant was not in the course and scope of employment, as a matter of law, at the time of the motor vehicle accident. Specifically, Employer contends that the WCJ's findings of fact clearly establish that Claimant's actions were so removed from his employment as to constitute abandonment.

Initially, "[w]hether an employee is acting within the course of his employment is a legal determination to be made based upon the WCJ's findings of fact." *Ace Wire Spring & Form Co. v. Workers' Comp. Appeal Bd. (Walshesky)*, 93 A.3d 923, 931 (Pa. Cmwlth. 2014).

Further,

> [t]his Court has analyzed course of employment cases in two ways, depending on whether the claimant is a traveling or stationary employee. What constitutes 'scope and course of employment' is broader for traveling employees than for stationary employees, and it includes driving to any appointment for the employer. Whether a claimant is a traveling employee is determined on a case by case basis, and the Court must consider whether the claimant's job duties involve travel, whether the claimant works on the employer's premises or whether the claimant has no fixed place of work.

*Rana v. Workers' Comp. Appeal Bd. (Asha Corp.)*, 170 A.3d 1279, 1284 (Pa. Cmwlth. 2017) (citations omitted). When an employee is determined to be a traveling employee, he is entitled to a presumption that he is in the course and scope of employment when he is traveling to or from work. *See id.* "To rebut this

---

evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

presumption, [an e]mployer ha[s] to establish [employee's] actions at the time of the accident were 'so foreign to and removed from' his usual employment that those actions constituted abandonment of employment." *Id.* at 1285 (quoting *Holler v. Workers' Comp. Appeal Bd. (Tri Wire Eng'g Solutions, Inc.)*, 104 A.3d 68, 71 (Pa. Cmwlth. 2014)).  The issue herein is whether Employer rebutted the presumption that as a traveling employee who set out to work in the morning, Claimant's injury occurred while in the course and scope of his employment.

We begin our analysis with a review of cases involving the traveling employee presumption.  In 1966, the Pennsylvania Superior Court decided *Maher v. Hallmark Cards, Inc.*, 218 A.2d 593 (Pa. Super. 1966).  In *Maher*, the decedent, a traveling employee, stopped at a hotel for drinks with co-workers after finishing the employer's business and was in an accident on his way home therefrom.  The *Maher* Court ruled that the traveling employee presumption applied, the employer did not rebut the presumption, and the decedent's spouse was entitled to benefits.[4]

Thereafter, this Court held in *Oakes v. Workmen's Compensation Appeal Board (Pennsylvania Electric Co.)*, 469 A.2d 723 (Pa. Cmwlth. 1984): "[T]he established principal (sic) that one who is employed to travel and who is provided with transportation in order to carry out such duty has a scope of employment that is 'necessarily broader than that of an ordinary employee, and is to be liberally construed to effectuate the purposes of the [WC] Act.[5]'" *Oakes*, 469 A.2d at 725 (quoting *Aluminum Co. of Am. v. Workmen's Comp. Appeal Bd. (Lindsay)*, 380 A.2d 941 (Pa. Cmwlth. 1977)).

---

[4] Notably, *Maher* involved a fatality and, as set forth in *Oakes v. Workmen's Compensation Appeal Board (Pennsylvania Electric Co.)*, 469 A.2d 723 (Pa. Cmwlth. 1984), the liberality of the reading of the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1066, goes to the claimant, *i.e.*, the widow, not the decedent.

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

4

An examination of the underlying facts in each case reveals the rationale behind the traveling employee presumption. In *Maher*, the claimant's decedent was working in Downingtown, Pennsylvania, and went across the street from the news agency wherein he was assisting other salesmen in setting up a greeting card display, to a hotel for drinks after his work was completed. The accident occurred in Downingtown, on his way home to Philadelphia. Clearly, the decedent had not left his work location of Downingtown at the time of the accident. Similarly, in *Oakes*, the claimant's decedent had been working in Meadville, Pennsylvania, approximately 13.3 miles from his home. The decedent stopped numerous places after his work was completed. However, all of the places he stopped were in Meadville. The accident happened while the decedent was traveling home from Meadville. Thus, because the decedents in *Maher* and *Oakes* were not in the vicinity of their homes when they stopped after the end of their workdays, "[t]he homeward trip was a necessary part of the[ir] business excursion[s]." *Oakes*, 469 A.2d at 726 (emphasis omitted) (quoting *Maher*, 218 A.2d at 596). As has been recognized, traveling employees do not have "*the option* of avoiding" the hazards of traveling homeward. *Ball-Foster Glass Container Co. v. Giovanelli*, 177 P.3d 692, 697 (Wash. 2008) (emphasis added).

Indeed, as this Court in *Roman v. Workmen's Compensation Appeal Board (Department of Environmental Resources)*, 616 A.2d 128, 130 (Pa. Cmwlth. 1992), expounded: "[T]emporary departures from the work routine for the purpose of administering to the comforts **of an off-the-premises employee** . . . will not interrupt the continuity of the employee's course of employment." *Id.* at 130-31 (emphasis added) (quoting *Port Auth. of Allegheny Cty. v. Workmen's Comp. Appeal Bd. (Stevens)*, 452 A.2d 902 (Pa. Cmwlth. 1982)).

In *Roman*, the claimant worked as an inspector, which required him to travel to various construction sites. After finishing an inspection, the claimant was

injured in a motor vehicle accident. The claimant testified that at the time of the accident he was on his way to check in to a hotel in Wilkes-Barre, Pennsylvania. The employer presented contrary evidence to show that when the accident occurred the claimant was en route to meet his girlfriend. The referee found that comparable hotels were available closer to the construction sites, but the claimant chose to stay in Wilkes-Barre so he could visit his girlfriend. The referee also found that the claimant was not required to check in to the hotel midday, which is when the accident occurred. As a result, the referee concluded the claimant was not within the course and scope of his employment at the time of the accident, and the Board affirmed. This Court reversed, reaffirming the legal principle that as a traveling employee who was injured after setting out on his employer's business, the claimant was entitled to a presumption that he was within the course and scope of his employment. The *Roman* Court explained that the claimant was required to stay in a hotel in the vicinity of the construction sites during the workweek and return to his home in York, Pennsylvania, on the weekend. Because the claimant was working in the Scranton/Wilkes-Barre area and the accident occurred within five minutes of the Wilkes-Barre work site, the Court ruled that he was in the course and scope of his employment when traveling from the work site.

Contrary to the above cases, Claimant in the instant case left his work vicinity, passed his home, attended happy hour at the Tilted Kilt and was involved in an accident on his way home from happy hour. Importantly, when the decedent in *Maher* left the Downingtown hotel, he had not left his work location of Downingtown. Similarly, in *Oakes*, the decedent's accident happened while the decedent was traveling home from his work location of Meadville. Finally, in *Roman*, the claimant was required to stay in a hotel in the vicinity of the construction sites during the workweek and the accident occurred within five minutes of the work

6

site. Here, not only was Claimant in the vicinity of his home, he chose to pass his home to attend the happy hour, after which the accident occurred.

In examining the traveling employee presumption, it is clear the claimants in *Maher* and *Oakes* were granted benefits because "[*t*]*he homeward trip was a necessary part of the business excursion.*" *Oakes*, 469 A.2d at 726 (quoting *Maher*, 218 A.2d at 596 (emphasis added)). Moreover, "[t]he rule recognizes that a traveling employee is subjected to hazards [the employee] would otherwise *have the option* of avoiding, and as a result, the hazards of travel become the hazards of the employment." *Ball-Foster*, 177 P.3d at 697 (emphasis added; quotation marks omitted).

In the instant case, "[t]he homeward trip" had ended before Claimant traveled to the Tilted Kilt. *Oakes*, 469 A.2d at 726 (emphasis omitted) (quoting *Maher*, 218 A.2d at 596). Claimant clearly had the option of avoiding any hazards simply by choosing to take the exit home as opposed to bypassing his exit to attend happy hour. Under the circumstances, Claimant's travel from the Tilted Kilt to his home cannot be considered in the course and scope of his employment. Accordingly, this Court holds that "based upon the WCJ's findings of fact," Claimant was not in the course and scope of his employment at the time of his motor vehicle accident. *Walshesky.*

Claimant further contends that because the gathering at the Tilted Kilt was a work-sponsored event, he remained in the course and scope of his employment when he traveled thereto. However, the WCJ, as fact finder, determined that the meeting at the Tilted Kilt was not furthering the interests of Employer, but rather was a social gathering. The law is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8

7

(Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness[.]" *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

> Here, the WCJ expressly declared:
>
> [T]his [WCJ] credits, in part, and rejects, in part, the representations of [] Claimant as to the events of February 27, 2015 and their work-relatedness. This [WCJ] had the opportunity to review the bearing and demeanor of [] Claimant, and while it is unfortunate Claimant was involved in a motor vehicle accident on February 27, 2015, **his representations that the event was, in his mind, mandatory at the Tilted Kilt that evening is rejected** in light of the more credible testimony of his colleagues.

WCJ Dec. at 8 (emphasis added).

To accept Claimant's argument would require this Court to reverse the WCJ's credibility determination that Claimant was not required to attend happy hour. The law expressly prohibits an appellate court from taking such action. *See Jacobs v. Unemployment Comp. Bd. of Review (Bridgeview Partners)*, 137 A.3d 1260 (Pa. 2016). Because Claimant had already completed his homeward travel before attending happy hour, Claimant was outside the scope of his employment when the injury occurred. Accordingly, substantial evidence supports the WCJ's findings of fact, and the facts support the conclusion that Employer rebutted the presumption.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Peters,            :
           Petitioner     :
           :
         v.         :
           :
Workers' Compensation Appeal Board   :
(Cintas Corporation),         :    No. 1835 C.D. 2017
         Respondent    :

## O R D E R

AND NOW, this 18th day of July, 2019, the Workers' Compensation Appeal Board's November 16, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Peters,       :
       Petitioner  :
            :
     v.       :  No. 1835 C.D. 2017
            :  Argued:  March 13, 2019
Workers' Compensation Appeal  :
Board (Cintas Corporation),   :
       Respondent :


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
     HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE ELLEN CEISLER, Judge


**DISSENTING OPINION BY**
**JUDGE COHN JUBELIRER**     **FILED:  July 18, 2019**


The course of employment for traveling employees is necessarily broad. *Roman v. Workmen's Comp. Appeal Bd. (Dep't of Envtl. Res.),* 616 A.2d 128, 130 (Pa. Cmwlth. 1992).  Once a traveling employee sets off on the employer's business, there is a presumption that the employee is furthering the employer's interest.  *Id.* To find a traveling employee is outside of the course of employment, the employer must show the employee's "actions were **so foreign to and removed from his usual employment** that they constitute an abandonment of that employment."  *Id.* (emphasis added).  Here, Jonathan Peters (Claimant), a traveling salesperson, was injured in a motor vehicle accident after attending what the Majority labels as a "happy hour," a characterization not found in either the Decision of the Workers'

Compensation Judge (WCJ) or the Opinion or Order of the Workers' Compensation Appeal Board (Board). Importantly, (1) Claimant's employer, Cintas Corporation (Employer), invited him to the social event; (2) Employer organized and paid for the social event; (3) Employer regularly held a social event during sales blitzes; and (4) the social event occurred at the end of Claimant's workday. Given these facts, I cannot conclude that, in attending this employer-sponsored social event, Claimant's "actions were so foreign to and removed from his usual employment that they constitute an abandonment of that employment," which is the standard for traveling employees. *Id.* Accordingly, I would reverse the Board's Order, which affirmed the Decision of the WCJ, and remand the matter for further proceedings related to the medical component of the Claim Petition.

To be entitled to benefits, claimants must show they suffered a work-related injury under Section 301(c)(1) of the Workers' Compensation Act (Act).[1] An injury is compensable only if a claimant proves that the injury occurred in the course of employment and was related thereto. *O'Rourke v. Workers' Comp. Appeal Bd. (Gartland)*, 125 A.3d 1184, 1189 (Pa. 2015). Whether employees' injuries occurred in the course of their "employment is a question of law to be determined" based upon the WCJ's findings of fact. *PPL v. Workers' Comp. Appeal Bd. (Kloss)*, 92 A.3d 1276, 1283 (Pa. Cmwlth. 2014). "What constitutes scope and course of employment" varies "depending on whether the claimant is a traveling employee or a stationary" one. *Jamison v. Workers' Comp. Appeal Bd. (Gallagher Home Health Servs.)*, 955 A.2d 494, 498 (Pa. Cmwlth. 2008). Given the remedial nature of the Act, "[t]he course of employment is necessarily broader for traveling employees." *Roman*, 616 A.2d at 130.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

The different treatment of traveling employees, as compared to stationary ones, is longstanding and not unique to Pennsylvania. Also known as the continuous coverage rule, or the commercial traveler rule, the traveling employee rule is the "prevailing" or "the majority view among jurisdictions throughout the United States." *Ball-Foster Glass Container Co. v. Giovanelli*, 177 P.3d 692, 696 (Wash. 2008); *Buczynski v. Indus. Comm'n of Utah*, 934 P.2d 1169, 1172-73 (Utah 1997) (summarizing cases across the country). The rationale behind the doctrine has been explained as follows: "[w]hen the travel is essentially part of the employment, the risk [of injury during activities necessitated by travel] remains an incident to the employment even though the employe[e] may not actually be working at the time of the injury." *Buczynski*, 934 P.2d at 1174 (quoting *State Accident Ins. Fund Corp. v. Reel*, 735 P.2d 364, 367 (Or. 1987)) (alterations in original) (emphasis omitted). Stated another way, "[t]he rule recognizes that a traveling employee is subjected to hazards [the employee] would otherwise have the option of avoiding," and as a result, "the hazards of travel become the hazards of the employment." *Ball-Foster*, 177 P.3d at 697 (internal quotation omitted).

In Pennsylvania, this Court has formulated the traveling employee rule as follows:

> When a traveling employee is injured **after setting out on the business of his employer**, **it is presumed that he was furthering the employer's business at the time of the injury** . . . . **The employer bears the burden of rebutting this presumption** . . . . To meet its burden, the employer must prove that the claimant's actions were so foreign to and removed from his usual employment that they constitute an abandonment of that employment.

*Roman,* 616 A.2d at 130 (emphasis added).

RCJ-3

Here, there is no dispute that Claimant was a traveling employee. There is also no dispute that Claimant set out on the business of Employer that morning when he went to his appointments and had been performing work on Employer's behalf all day. This is sufficient to give rise to the presumption that Claimant was acting within the course and scope of his employment at the time he was injured, which occurred later that same day. Therefore, the burden shifts to Employer to rebut this presumption by showing that Claimant's "actions were **so foreign to and removed** from his usual employment that" he abandoned it. *Id.* (emphasis added). We have held that to constitute abandonment, a break in employment "must . . . be of a **pronounced nature**." *Universal Cyclops Steel Corp. v. Workmen's Comp. Appeal Bd. (Krawczynski)*, 305 A.2d 757, 764 (Pa. Cmwlth. 1973) (emphasis added). "To be denied compensation, an employee must have '**virtually abandoned** the course of his employment, or . . . at the time of the accident, [be] **engaged in something wholly foreign thereto.**'" *Pfizer, Inc. v. Workmen's Comp. Appeal Bd. (Gresham)*, 568 A.2d 286, 290 (Pa. Cmwlth. 1989) (quoting *Capitol Int'l Airways, Inc. v. Workmen's Comp. Appeal Bd.*, 428 A.2d 295, 297 (Pa. Cmwlth. 1981)) (first emphasis added).

The Majority concludes that by passing the normal highway exit for his home and attending the non-mandatory event at the Tilted Kilt, Claimant "abandoned" his employment. Based upon our precedent involving traveling employees, I do not believe these facts legally constitute abandonment. The courts have found traveling employees were furthering the interests of their employers in situations where the claimants' actions were more of a personal nature than Claimant's actions here. For instance, in *Maher v. Hallmark Cards, Inc.*, 218 A.2d 593 (Pa. Super. 1966), benefits were awarded to the survivors of a traveling salesman who was killed in a motor

vehicle accident. The decedent had been assisting other salesmen with setting up a greeting card display. After the work was completed around 7:45 p.m., the decedent and his colleagues went to a hotel across the street where they drank beer and talked business. At about midnight, after decedent had imbibed four to six bottles of beer, he left and was killed in an accident one hour later. The referee[2] concluded the decedent was in the course of his employment because he was returning from a job at the time of the accident and awarded benefits. The Board affirmed. On appeal, the employer argued the decedent was not in the course or scope of his employment because he voluntarily assisted the salesmen while outside of his own sales territory, and the decedent had deviated from his employment since he was at a place where his presence was not required and a number of hours elapsed from the time the work was completed to when the accident occurred. The Superior Court affirmed the award of benefits, also concluding the decedent was in the course and scope of his employment at the time. *Id.* at 595. It explained that "[t]he course of employment of an outside salesman is necessarily broader than that of an on the premises employe[e]." *Id.* It further explained that "a break in the course of employment must be of a pronounced character," and slight deviations do not remove the employee from the course of employment. *Id.* at 596. The Superior Court concluded the stop at the hotel was not a deviation. *Id.*

In *Oakes v. Workmen's Compensation Appeal Board (Pennsylvania Electric Co.)*, 469 A.2d 723 (Pa. Cmwlth. 1984), this Court reversed a Board order that denied benefits to the claimant. There, a foreman was killed on his way home from working on a power outage for the employer. Seven hours elapsed between the time he completed working on the power outage and the accident. During this time, the

---

[2] WCJs were previously referred to as referees.

decedent shopped for building materials needed for an addition he was constructing at his home. He also stopped at various bars throughout the day. The claimant was subject to recall, but there was no evidence he was called back in during this time. The referee found the decedent engaged in personal business for nearly seven hours after his workday completed and concluded the decedent was not engaged in the furtherance of the employer's business. The Board affirmed, but we reversed. Citing *Maher*, we held the decedent was "killed in completing the employer's task on which he had embarked earlier in the day" and "the homeward trip was a necessary part of his employment." *Id.* at 726.

Here, Claimant attended the employer-sponsored social event at the Tilted Kilt immediately following his last sales appointment. Employer paid for appetizers and drinks. Whether Claimant voluntarily attended the event does not sever the ties to Employer. Nor does the fact that the event's purpose was more social than business related. In *Maher*, the decedent's actions were purely personal. The fact remains that Claimant, at Employer's invitation, attended the event, which was organized and paid for by Employer, at the end of his workday, and Employer acknowledged holding similar events on other occasions.

Similarly, the WCJ's finding that Claimant was not required to attend the event does not remove Claimant from the realm of a traveling employee. The WCJ and Board both relied upon cases, although involving social events, where the claimants were **not traveling employees**, to conclude Claimant was not eligible for benefits. *Canning v. Workers' Compensation Appeal Board (Pennsylvania Senate)* (Pa. Cmwlth., No. 985 C.D. 2014, filed January 9, 2015); *Brown v. Workmen's Compensation Appeal Board (Liken Employment Nursing Services)*, 588 A.2d 1014

(Pa. Cmwlth. 1991). Therefore, a different analytic framework applied, and **neither case** is controlling here.

This case is more akin to *Investors Diversified Services v. Workmen's Compensation Appeal Board (Howar)*, 520 A.2d 958 (Pa. Cmwlth. 1987), where we applied the traveling employee presumption to a claimant attending a social event hosted by the employer. There, the claimant worked as a traveling insurance and investment representative and was injured returning from a holiday party hosted by the divisional sales manager. The referee and Board awarded benefits. The employer argued the claimant was not furthering the employer's interest because the holiday party was purely social, and the claimant broke any ties to his employment by taking a woman on a ride in his new vehicle before leaving the party. We held attending the party fostered camaraderie, even if attendance was not required. *Id.* at 960-61. We also found that the claimant's conduct in taking the woman for a ride in his new vehicle was not sufficient to constitute abandonment of his employment. *Id.* at 961. Citing *Maher* and *Macke Vending Co. v. Abrams*, 365 A.2d 451 (Pa. Cmwlth. 1976), in which we awarded death benefits to the family of an employee killed on his way home after attending a work meeting and visiting with his friends for several hours, we held in *Investors Diversified Services* that, "**as a matter of law**," we could not conclude "the claimant's deviation from the course of his employment was so pronounced in character as to" disqualify him from receiving benefits. *Investors Diversified Servs.*, 520 A.2d at 961 (emphasis added).

Claimant's actions here are similar to those of the claimant in *Investors Diversified Services*. The WCJ found that attendance at the Tilted Kilt was not mandatory, and we are bound by the WCJ's fact finding, *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa.

Cmwlth. 2004). However, whether Claimant was in the course of his employment and furthering the interest of Employer is a **question of law**, as is whether Claimant abandoned his employment, and we are **not bound** by the WCJ's or Board's **legal** conclusions. *Kloss*, 92 A.3d at 1283; *Investors Diversified Servs.*, 520 A.2d at 960-61. Contrary to the Majority's view, it is not necessary to disturb the WCJ's finding that attendance at the Tilted Kilt event was voluntary to determine that Claimant did not abandon his employment by attending the event. Just because attendance was not required does not mean the event was not work-related. There is no dispute that Sales Manager invited Claimant and other salespersons to the Tilted Kilt during the sales blitz, similar to other events Sales Manager has organized during past blitzes. Employer paid for the drinks and appetizers. While Claimant may have driven past the highway exit for his home in order to attend the event, he did so immediately at the end of his sales calls. Based on our precedent, I cannot conclude, as a matter of law, that driving by one's exit home on a highway to attend an event organized and paid for by one's employer is of such a "pronounced nature" to constitute **abandonment** of one's employment or is "wholly foreign" to one's employment. *Universal Cyclops*, 305 A.2d at 764 (citation omitted) (emphasis added); *see also Pfizer, Inc.*, 568 A.2d at 290. Presumably, had Claimant's home been located on the other side of the Tilted Kilt, or his travels taken him back to town in a different direction, the Majority would not have found that he abandoned his employment.

This is a difficult case, but given our precedent, the humanitarian purpose of the Act, and the policy behind the traveling employee rule, I would conclude that Claimant's actions did not constitute abandonment of his employment. I recognize that it may seem unfair that traveling employees are treated differently than stationary ones. However, that is not remedied by determining a traveling

employee's eligibility for benefits based upon the location of his home, and whether he passed his exit on the highway on his way to attend a social event organized and sponsored by Employer.  For these reasons, I would reverse the Board's Order.

                                                _____

**RENÉE COHN JUBELIRER**, Judge

President Judge Leavitt joins in this dissenting opinion.

Jonathan Peters,                          :
                                          :
                    Petitioner            :
                                          :
          v.                              : No. 1835 C.D. 2017
                                          : Argued:  March 13, 2019
Workers' Compensation Appeal              :
Board (Cintas Corporation),               :
                                          :
                    Respondent :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge



CONCURRING OPINION
BY JUDGE WOJCIK                                    FILED:  July 18, 2019



          I concur in the result reached by the Majority, but I disagree with its

analysis insofar as it emphasizes the location of the activity instead of whether the

activity was employment-related.  The workers' compensation judge (WCJ) found

as fact that the event at the Tilted Kilt was voluntary, and I would affirm on that

basis.  Whether the event was held at a location before or after the employee's

customary highway exit is neither dispositive, nor relevant, to whether the

employee's attendance was required or encouraged, or whether the activity was

work-related or in furtherance of the employer's business interests.  If the WCJ had

found the event to be of a different character, its location would be entirely

irrelevant. The WCJ, however, plainly found that the event was voluntary and not work-related. The analysis should end here.

Thus, I agree that while the claimant may be a travelling employee, he was not a travelling employee at the time of his injury. I would affirm on the bases enunciated by the WCJ, and affirmed by the Board, all of which are supported by substantial evidence.


_____
MICHAEL H. WOJCIK, Judge

MHW - 2